COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

EL PASO INDEPENDENT SCHOOL
DISTRICT, DR. LORENZO GARCIA, §
AND MARK MENDOZA,

§       No. 08-11-00329-CV

      Appellants,

§       Appeal from

v.

§       327th District Court

MICHAEL McINTYRE AND
LAURA McINTYRE, INDIVIDUALLY §       of El Paso County, Texas
AND ON BEHALF OF THEIR
CHILDREN, K.M., L.M., C.M., M.M., §       (TC # 2007-3210)
AND L.M.,

§

      Appellees.

§

## O P I N I O N

In this accelerated interlocutory appeal, we must balance a couple's right to home school

their children against the rights of a school district to investigate the curriculum utilized.

Michael and Laura McIntyre, individually and on behalf of five of their minor children, filed this

lawsuit for damages and declaratory and injunctive relief after Class C misdemeanor truancy

complaints were filed in a justice court against three of the children.[1]  Originally, the McIntyres

filed suit against three family members, the El Paso Independent School District (EPISD), and

five of the District's employees.  The claims against the family members and three of the five

---

[1] Because we will mention many members of the McIntyre family, we will refer to them by their given names.

District employees were later dismissed, leaving the District, former superintendent Dr. Lorenzo Garcia, and attendance officer Mark Mendoza as the only remaining defendants.

## FACTUAL SUMMARY

The McIntyres have nine children, including the five minor children who are parties to the law suit. After completion of the Fall 2004 semester, the McIntyres withdrew their children from private school to begin home schooling them. Initially, the children were taught out of empty space in a motorcycle dealership owned by Michael and his twin brother, Tracy. Tracy testified in his deposition that during the time home schooling operated out of the dealership, he never observed the children pursuing traditional schoolwork. While the children would sing or play instruments, he never saw them reading books or doing arithmetic, nor did he observe any computers or other school equipment. Tracy overhead one of the McIntyre children tell a cousin that they did not need to do schoolwork because they were going to be raptured. Tracy discussed the situation with his parents, Gene and Shirene. In August 2005, due to a family dispute, the home school was moved from the motorcycle dealership to a rental house owned by the McIntyres.

### Complaint To The District and Mendoza's Investigation

In January 2006, the District received an anonymous complaint that the McIntyre children were not being educated. In November, Gene and Shirene met with Mark Mendoza, the District's designated attendance officer, and expressed concerns that their grandchildren were not attending school or otherwise receiving a proper education. After the meeting, Mendoza confirmed that the oldest of the McIntyre children, Tori, had run away from home at age seventeen so she could "attend school." He discovered that when Tori enrolled at Coronado High School, she was unable to provide any information regarding the level of her education or

the curriculum provided as part of her home school education. The McIntyres refused to provide any information to the District on Tori's behalf. As a result, Tori was placed as a second semester freshman, a year and a half behind her age group.

In December 2006, Mendoza asked a representative from Hornedo Middle School to visit the McIntyre home and inquire about the curriculum used to teach their children. The McIntyres answered the door, but Laura said only that she was tired of being harassed and would call her attorney. Lynda Sanders of Polk Elementary School was also asked to go to the McIntyre home and obtain a signed home school verification form. The McIntyres refused to sign the form or provide any other information regarding their home school curriculum. Following her visit, Sanders faxed the home school verification form to a Home School Legal Defense Association (HLSDA) attorney in Washington. Sanders also reported to the campus principal that the McIntyres were uncooperative and had refused to sign the form. Sanders later received a letter from the HSLDA attorney. The letter claimed that the McIntyres were "in full compliance" but that they declined to "submit any additional information." The letter did not reflect that the attorney was licensed in Texas, or had any personal knowledge of the educational studies occurring in the McIntyre home. In January 2007, following their refusal to provide information to campus personnel, various notices and warnings were given to the McIntyres notifying them of their children's failure to attend school, and requesting conferences. The McIntyres did not cooperate with any of the requests for information or meetings.

### Truancy Complaints Are Filed

Relying on information provided by the children's grandparents, his confirmation of information regarding Tori's inability to describe her home school education, and the refusal of the McIntyres to provide the District with any written assurance regarding the curriculum they

were using "from somebody who had firsthand knowledge of the homeschooling education that was happening in the home," Mendoza filed truancy complaints. In the blanks that would normally have listed the dates of absence on the truancy complaint, Mendoza wrote, "Has not met home school verification requirements." According to Mendoza, he did not believe that the McIntyres had provided sufficient evidence of a *bona fide* home school.[2]

After the complaints were filed, HSLDA sent a second letter to Sanders, with copies to other District personnel. The letter was essentially identical to the first letter, but it also included a threat to file suit.

### Communications After Truancy Complaints Are Filed

After receiving the citations, Laura called Mendoza. She recorded the conversation and a transcript of the recording is contained in the record. Janet Flores, the Juvenile Case Manager for the Justice of the Peace Court where the truancy complaints were filed, testified that she mailed notices of the truancy charges to the McIntyres. The notices advised them of their plea options and their rights, including rights to a jury trial, to retain counsel, and to subpoena witnesses. Laura called Flores after receiving notice and told her that she and her husband were home schooling their children. Flores informed Laura that she could submit documentation showing that she was, in fact, providing an education at home to her children, but Laura responded that she did not feel that it would be "right" to do so.[3]

---

[2] The truancy complaints were filed without any screening or review by the District Attorney's Office, as was customary at the time. As attendance officer, Mendoza had the authority to file a truancy complaint, but after filing, an Assistant District Attorney would ultimately decide whether to try or dismiss the case. However, per subsequent agreement of the EPISD and the District Attorney's Office, the DA now screens truancy reports involving alleged home school situations prior to filing, and cases will not be filed without its approval.

[3] In an affidavit submitted over two years after filing this lawsuit, Laura identified the curriculum that they had purchased as the A Beka curriculum, the same curriculum that had been used at the children's private school. When Mendoza was attempting to ascertain whether they were conducting a *bona fide* home school, however, they refused to identify any curriculum that they were using.

PROCEDURAL HISTORY

In July 2007, the McIntyres initiated the instant suit. They sought declaratory and injunctive relief and damages based on alleged violations of the Texas Education Code, the Texas Religious Freedom Restoration Act (TRFRA), the Texas Constitution, and the United States Constitution.

### Truancy Complaints Investigated and Ultimately Dismissed

Once this suit was filed, the District informed Matthew Moore, an assistant district attorney, about the case and its history. Moore was asked to use his independent judgment in pursuing the truancy complaints. The McIntyres later entered pleas of not guilty in all of the truancy cases, and requested a separate jury trial for each. On September 7, 2007, Moore wrote a letter to the McIntyres advising that if they would provide a signed statement that they were meeting state requirements, he would dismiss the truancy charges. The McIntyres refused to do so. In October 2007, Moore contacted Tori and asked if she would vouch for the fact that her parents were using a curriculum, but Tori declined to get involved. Moore testified in his deposition that he believed Tori and her grandparents would have testified that the children were not being educated or "learning anything," but they did not want to testify. Ultimately, Moore decided to dismiss the truancy complaints.

### Motions in the Trial Court

The District defendants filed pleas to the jurisdiction and a motion for summary judgment based on the McIntyres' failure to exhaust administrative remedies; a plea to the jurisdiction as to the McIntyres' TRFRA claim; motions to dismiss based on the election of remedies provision in Section 101.106 of the Texas Civil Practice & Remedies Code; and a motion for summary

judgment based on the Education Code, official immunities as to the McIntyres' state law claims, and absolute and qualified immunities as to the McIntyres' Section 1983 federal claims.

## Issues For Review

Appellants bring nine issues for review. In Issue One, the District complains that the trial court erred in denying its plea to the jurisdiction with respect to the McIntyres' failure to provide the required pre-suit notice of their TRFRA claims. The McIntyres have conceded this point. In Issue Two, EPISD argues that the trial court erred in denying its plea to the jurisdiction based on the McIntyres' failure to exhaust administrative remedies prior to filing suit. In Issues Five, Six, Seven, and Eight, Appellants present various arguments in support of their claim that the trial court erred in refusing to dismiss the state law claims against the District employees. In Issue Five, they argue that based on the election of remedies provision in Texas Civil Practice and Remedies Code 101.106, the trial court erred in allowing the McIntyres to pursue state law claims against both the District and its employees, despite the District's motion to dismiss. In Issue Six, Appellants allege an exhaustion of administrative remedies claim closely related to that in Issue Two. Specifically, in Issue Six, Appellants allege that the trial court erred in denying the District employees' plea to the jurisdiction and (first) motion for summary judgment, and in ruling that the McIntyres were not required to exhaust administrative remedies despite Section 22.0514 of the Texas Education Code. In Issues Seven and Eight, Appellants contend that the McIntyres' state law claims against the District employees were barred by professional and governmental immunity, and therefore the trial court erred in denying Mendoza's second amended motion for summary judgment on immunity grounds.

Turning to the McIntyres' federal law claims, Appellants complain in Issues Three and Four that the trial court erred in refusing to grant summary judgment. Specifically, Issue Three

posits that the employees were entitled to absolute immunity from the federal claims while Issue Four posits that the employees were entitled to qualified immunity with respect to the same claims.

Finally, in Issue Nine, Appellants allege that the trial court erred in overruling their objections to the McIntyres' summary judgment evidence. Specifically, they argue that the trial court should have sustained their objections with respect to Laura's February 2010 and March 2011 affidavits.

In sum, Appellants ask that we: (1) reverse all three disputed orders of the trial court; (2) render judgment dismissing all of the McIntyres' state law claims against the District; (3) dismissing all claims of any nature against Dr. Garcia and Mendoza with prejudice; (4) awarding Appellants their costs and fees incurred herein and any such further relief to which they may be entitled; and (4) remanding this case to the trial court for further proceedings regarding the claims and counterclaims that remain pending there, consistent with our opinion and judgment.

## THE *LEEPER* DECISION

Both parties rely heavily on the Texas Supreme Court's decision in *Texas Education Agency v. Leeper*, 893 S.W.2d 432 (Tex. 1994). Therefore, we begin our discussion with an overview of home school law in Texas.

In *Leeper*, home school parents and home school curriculum providers (the plaintiffs) brought a class action suit against state officials (the defendants), challenging construction of compulsory attendance laws. *Leeper*, 893 S.W.2d at 432. The plaintiffs sought a declaratory judgment that the defendants had misinterpreted the private school exemption under Section 25.086(a) of the Texas Education Code. *Id.* at 438. The plaintiffs also claimed that the defendants "enforcement of the compulsory attendance law infringed upon their constitutional

rights, in violation of the Civil Rights Act, 42 U.S.C. § 1983." *Id*. As a result, the plaintiffs sought an injunction prohibiting all school districts and attendance officers from enforcing the compulsory attendance law against *bona fide* home schools. *Id*.

The Texas Supreme Court began its analysis by setting the historical backdrop of the Texas school system. *Id*. at 433-34. It looked to the first compulsory attendance law enacted in 1916 and traced the development of the Education Code and compulsory attendance laws forward. *Id*. The court then addressed the issue of whether a home school could fall within the private or parochial school exemption from the compulsory attendance requirements. *Id*. The court concluded that a home school **can** be a private school within the meaning of the statutory exemption found in Section 25.086(a)(1).

*Leeper* does not hold, or even imply, that every alleged "home school" automatically fits within the exemption. Rather, the case simply allows certain home schools meeting specific requirements to qualify as "private or parochial schools" for purposes of exemption. In fact, the plaintiffs did not argue that *every* home school falls within the exemption, but only, "homes in which children are taught in a bona fide manner from a curriculum designed to meet basic education goals." *Leeper*, 893 S.W.2d at 443. The central issue was not whether the school district had the authority to investigate truancy claims or to request information from parents of home school children regarding their curriculum. Instead, the question was whether **any** home school could fit within the private school exemption and whether or not the use or non-use of standardized achievement tests by home school parents could be outcome determinative of the home school status under the applicable exemption. Indeed the plaintiffs recognized that the use of standard achievement tests could be considered in ascertaining whether a home school curriculum was being taught in a *bona fide* manner, but maintained that test scores could not be

the determining factor. The court agreed. But nothing in *Leeper* suggests that an attendance officer does not have the right to investigate truancy claims, or that home school parents need not prove they are teaching their children in a *bona fide* manner from an appropriate curriculum. *Leeper* merely provides the possibility for a home school to qualify for exemption from compulsory attendance laws and prevents the determination as to whether or not an individual home school qualifies from turning on whether the home school provides standardized achievement test scores.

## TEXAS RELIGIOUS FREEDOM RESTORATION ACT

In Issue One, Appellants argue that the trial court erred in denying the District's plea to the jurisdiction as to the McIntyres' claims under the TRFRA because they failed to meet the pre-suit notice requirements under Chapter 110 of the Texas Civil Practice and Remedies Code. As we have noted, the McIntyres concede the issue. We sustain Issue One. We reverse and render judgment in the District's favor on this claim.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

In Issue Two, Appellants argue that the trial court erred by denying the District's plea to the jurisdiction and special exceptions because the McIntyres failed to exhaust their available administrative remedies as to their remaining state law claims. ***Standard of Review***

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims have merit. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action. *State v. Holland*, 221 S.W.3d 639, 642 (Tex 2007). The existence or absence of subject matter jurisdiction is a question of law which we review *de novo*. *Texas Department of Parks and Wildlife v. Miranda*, 133 S.W.3d

217, 226 (Tex. 2004). We look to the plaintiffs' petition to determine whether the facts as pled affirmatively demonstrate that jurisdiction exists. *Holland*, 221 S.W.3d at 642-43. We must accept the allegations in the petition as true, construe them in favor of the pleading parties, and examine the pleaders' intent. *Miranda*, 133 S.W.3d at 227. We also consider any evidence relevant to jurisdiction without considering the merits of the claim beyond the extent necessary to determine jurisdiction. *Id*. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdiction issue, the trial court rules on the plea as a matter of law. *Id*. at 228.

### The Exhaustion of Remedies Doctrine

Under Texas law, an aggrieved party whose claim concerns the administration of school laws and involves disputed fact issues is required to exhaust all administrative remedies prior to filing suit. *Nairn v. Killeen Independent School Dist.*, 366 S.W.3d 229, 240 (Tex.App.--El Paso 2012, no pet.), *citing Mission Indep. Sch. Dist. v. Diserens*, 144 Tex. 107, 188 S.W.2d 568, 570 (1945); *Ysleta Indep. Sch. Dist. v. Griego*, 170 S.W.3d 792, 795 (Tex.App.--El Paso 2005, pet. denied); *see also* TEX.EDUC.CODE ANN. § 7.057 (West 2012). "Requiring exhaustion of administrative remedies is not meant to deprive an aggrieved party of any legal rights. It is meant, rather, to provide an orderly procedure by which aggrieved parties may enforce those rights." *Ysleta Independent School District v. Griego*, 170 S.W.3d 792, 795 (Tex.App.--El Paso 2005, pet. denied), *citing Hinojosa v. San Isidro Indep. Sch. Dist.*, 273 S.W.2d 656, 657-58 (Tex.Civ.App.--San Antonio 1954, no writ). The requirement applies to grievances arising under school laws whether it is against a professional employee of a school district or a school district itself. *See Grimes v. Stringer*, 957 S.W.2d 865, 869 (Tex.App.--Tyler 1997, pet. denied)(holding that regardless of whether a grievance is against a professional employee of a school district, or a

- 10 -

school district itself, a complainant must exhaust his administrative remedies in order to facilitate settlement before resorting to judiciary for resolution). This requirement is consistent with long standing public policy favoring keeping school controversies, as far as possible, out of the courts. *See Palmer Pub. Co. v. Smith*, 130 Tex. 346, 109 S.W.2d 158, 160 (Tex.Com.App. 1937)(also stating, "Proper procedure for settlement of such controversies has been, we think, plainly provided by appeal to school authorities, and should be followed and exhausted before resort to legal proceedings in the courts.").

### Exceptions to the Doctrine

Despite these general rules, there are several recognized exceptions. Exhaustion of administrative remedies for claimants seeking relief from the administration of school laws is not necessary if: (1) the aggrieved party will suffer irreparable harm and the administrative agency is unable to provide relief; (2) the claims are for a violation of a constitutional or federal statutory right; (3) the cause of action involves pure questions of law and the facts are not disputed; (4) the Commissioner of Education lacks jurisdiction over the claims; (5) the administrative agency acts without authority; or (6) the claims involve parties acting outside the scope of their employment. *Dotson v. Grand Prairie Independent School Dist.*, 161 S.W.3d 289, 291-92 (Tex.App.--Dallas 2005, no pet.), *citing Gutierrez* v. *Laredo Independent School District*, 139 S.W.3d 363, 366 (Tex.App.--San Antonio 2004, no pet.), *Jones v. Dallas Independent School District*, 872 S.W.2d 294, 296 (Tex.App.--Dallas 1994, writ denied), and *Mitchison v. Houston Independent School District*, 803 S.W.2d 769, 773-74 (Tex.App.--Houston [14th Dist.] 1991, writ denied).

In addition to the administrative scheme set forth as part of the Education Code, the District maintains policies regarding the filing of complaints by parents or members of the

public.  The District's policy provides for three different "levels" of administrative review.

Specifically, complaints are categorized in relevant part as follows:

LEVEL ONE          An individual who has a complaint or concern shall request a conference with the appropriate administrator within 15 days of the event or action that is the subject of the complaint.  The administrator shall hold a conference with the individual within seven days of the request.   The administrator shall have seven days following the conference within which to respond in writing to the complainant.

LEVEL TWO          If the outcome of the conference with the administrator is not to the complainant's satisfaction or the time for a response has expired, the complainant may request a conference with the superintendent or designee.  The request must be filed within seven days following receipt of a response or, if no response is received, within seven days of the response deadline.   The superintendent or designee shall hold the conference within seven days after receiving the request.

Prior to or at the time of the conference the complainant shall submit a written complaint that includes his or her signed statement of the complaint, any evidence in its support, the solution sought, and the date of the conference with the administrator.   The superintendent or designee shall have seven days following the conference within which to respond in writing to the complainant.

LEVEL THREE        If the outcome of a conference with the superintendent or designee is not to the complainant's satisfaction or if the time for a response has expired, the complainant may submit to the superintendent or designee a request to place the matter on the agenda of a future Board meeting. The request shall be in writing and must be filed within seven days of the response or, if no response is received, within seven days of the response deadline.

The Superintendent shall inform the complainant of the date, time, and place of the meeting, in writing.

The policies apply to complaints against the District or a District employee acting within the scope of employment.  Nothing in the policy limits the application to complaints filed by a parent of a District student.

The McIntyres claims involve the "school laws of the State" and it is clear that they did not pursue administrative remedies prior to filing suit.  Unless an exception to the general rule applies, the trial court lacked subject matter jurisdiction.  *See Hitchcock v. Board of Trustees Cypress-Fairbanks Independent School District*, 232 S.W.3d 208, 213 (Tex.App.--Houston [1st

Dist.] 2007, no pet.)(until all administrative remedies have been exhausted, a trial court lacks subject matter jurisdiction). However, before we address whether the causes of action fall within an exception to the exhaustion requirement, we first address the McIntyres contentions that: (1) based on Section 1.001(a) of the Texas Education Code, no administrative scheme set forth in either Title 1 or Title 2 of the Code applies to their children because their children never attended public school; and (2) that the filing of the truancy complaint in justice court eliminated any exhaustion of administrative remedies requirement.

The "school laws of this state" include Titles 1 and 2 of the Texas Education Code "and rules adopted under those titles." *See* TEX.EDUC.CODE ANN. § 7.057(f)(2). The McIntyres assert that because their children never attended public school, they are essentially exempt. This argument rests on the introductory language in Section 1.001(a) which provides: "This code applies to all educational institutions supported in whole or in part by state tax funds unless specifically excluded by this code." TEX.EDUC.CODE ANN. § 1.001(a). Appellants argue that while Section 1.001(a) indicates that institutions which receive state tax funds are subject to the Education Code, it does not expressly indicate that all other institutions are not subject to the Code. *See Institute for Creation Research Graduate School v. Texas Higher Education Coordinating Board*, No. A-09-CA-382-SS, 2010 WL 2522529, at *6 (W.D.Tex. June 18, 2010, no pet.)(finding that Section 1.001(a) "does not limit the applicability of the Education Code only to institutions supported by state tax funds."). We agree.

Next, we address the McIntyres claim that they were exempt from the exhaustion of administrative remedies requirement based on the fact that the District filed truancy charges before they filed their lawsuit. According to the McIntyres, the District sought judicial intervention such that the McIntyres were not required to pursue administrative remedies.

However, the truancy complaints were filed in the name of the State of Texas; the District was not a party to the justice court proceedings. Accordingly, the filing of truancy charges did not negate the McIntyres' duty to exhaust administrative remedies prior to filing suit.

Having established the existence of an applicable administrative scheme and the McIntyres' failure to exhaust their administrative remedies thereunder, we next address whether some exception to the general rule applies such that the McIntyres were excused from any obligation to first exhaust their administrative remedies.

### *Questions of Fact or Law?*

Appellants argue that the dispute involves questions of fact rather than pure questions of law, thereby requiring the McIntyres to exhaust their administrative remedies before filing suit. The McIntyres counter that their claims do not involve questions of fact, and since their claims involve only issues that are purely questions of law, they were not required to exhaust their administrative remedies. Although the McIntyres acknowledge the existence of many disputed facts, they claim that none affects the issue on which the District contends exhaustion of administrative remedies was required. The McIntyres frame the issue thusly:

> [D]oes the District have the authority to demand to review (and, by implication, approve or disapprove) a home school's curriculum and obtain progress reports for its students (or require compliance with TEA-mandated curriculum as an alternative), and file criminal charges as a consequence for failure to capitulate to this demand?

We agree with Appellants that a fact issue exists. The type of factual dispute found here is exactly the type of claim that should be reviewed through the administrative process before the court accepts jurisdiction. *See Hicks v. Lamar Consolidated Independent School District*, 943 S.W.2d 540, 543 (Tex.App.--Eastland 1997, no writ); *Muckelroy v. Richardson Independent School District*, 884 S.W.2d 825, 830 (Tex.App.--Dallas 1994, writ denied). The allegations in

the McIntyres pleadings support our conclusion. They seek "a declaration that [the McIntyres] are innocent as to all charges filed by EPISD." The determination of a party's guilt is by definition a question of fact. *See* BLACK'S LAW DICTIONARY 1260 (7th ed. 1999)(providing an example of a "question of fact" as "whether a particular criminal defendant is guilty of an offense."). The McIntyres also sought a declaration that they could continue to direct the "education of their children and/or pursue their education free from fabricated civil/criminal charges." If this particular claim does not include a factual determination, then it also does not provide a justiciable request for declaratory relief. In other words, if the request seeks only a judicial declaration that Appellants are not permitted to violate state law, it is not justiciable because there is no controversy with respect to whether Appellants must abide by Texas law. *See Texas Ass'n of Business v. Texas Air Control Board*, 852 S.W.2d 440, 446 (Tex. 1993)(holding that a declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bexar-Medina-Atascosa Counties Water Control and Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*, 640 S.W.2d 778, 779-80 (Tex.App.--San Antonio 1982, writ ref'd n.r.e.); *Chapman v. Marathon Mfg. Co.*, 590 S.W.2d 549, 552 (Tex.Civ.App.--Houston [1st Dist.] 1979, no writ); *Davis v. Dairyland County Mutual Insurance Company of Texas*, 582 S.W.2d 591, 593 (Tex.Civ.App.--Dallas 1979, writ ref'd n.r.e.); *Sub-Surface Constr. Co. v. Bryant-Curington, Inc.*, 533 S.W.2d 452, 456 (Tex.Civ.App.--Austin 1976, writ ref'd n.r.e.); *Littlejohn v. Johnson*, 332 S.W.2d 439, 441 (Tex.Civ.App.--Waco 1960, no writ).

Finally, the determination of whether the McIntyres meet the requirements of a *bona fide* curriculum under *Leeper* and therefore qualify as exempt from the compulsory school attendance requirements involves a fact issue. This determination would require the McIntyres to submit the same information Mendoza requested but they refused to provide. Therefore, to the extent the trial court's conclusion was based on a finding that the controversy involves only questions of law, it was erroneous.

### *Excused by Constitutional Allegations?*

Next, we address Appellants' contention that the presence of constitutional allegations did not excuse the McIntyres from the requirement to exhaust administrative remedies. There is no direct administrative remedy for claims that a school board took action that violated the constitutional rights of the complaining party, because those are not part of the school laws of the state. *Jones v. Clarksville Independent School Dist.*, 46 S.W.3d 467, 474 (Tex.App.--Texarkana 2001, no writ). However, where the constitutional claims "are only ancillary to and supportive of" a complaint about the school district's application of school law, the complainant must first exhaust the administrative process. *Dotson*, 161 S.W.3d at 292. In addition, a party who alleges a constitutional claim must first exhaust available administrative remedies that may moot the constitutional claim.

Appellants contend that the constitutional issues presented here "do not stand alone as an attack on the actions . . . of the District," but instead are "inextricably intertwined with, and in fact subject to, their claim that they are in compliance with the compulsory school attendance provisions of the Education Code." In addition, Appellants assert that because the McIntyres constitutional claims can be decided on non-constitutional grounds, i.e. whether they fall within the *Leeper* exception, a court should not address their constitutional claims.

Several courts have recognized that exhaustion is required when a constitutional issue involves the administration of school laws and turns on fact issues. *See Poole v. West Hardin County Consolidated Independent School District*, 385 S.W.3d 52 (Tex.App.--Beaumont 2011), *rev'd on other grounds*, 384 S.W.3d 816 (Tex. 2012); *Janik v. Lamar Consolidated Independent School District*, 961 S.W.2d 322, 323 (Tex.App.--Houston [1st Dist] 1997, pet. denied). The McIntyres' claims all relate to the administration and applicability of school laws, specifically to the laws requiring attendance officers to investigate complaints of truancy and filed criminal charges based on the outcome of those investigations. Therefore, because all of the McIntyres' claims relate directly to school laws and the scope of their application, and the outcome of such dispute renders their constitutional claims moot, they were not excused of their duty to exhaust simply by asserting such constitutional claims.

### *Irreparable Harm?*

The next exception to the exhaustion of administrative remedies is irreparable harm. No exhaustion is required where irreparable harm will be suffered and the agency cannot provide relief. *See Houston Federation of Teachers, Local 2415 v. Houston Independent School District*, 730 S.W.2d 644, 645 (Tex. 1987). Appellants argue that the McIntyres were never at risk of irreparable harm. More specifically, Appellants assert that the McIntyres' claims that they were "under continuing threat" and that they "faced the prospect of additional criminal complaints," are nothing more than unsupported speculation. According to Appellants, the filing of misdemeanor truancy complaints cannot be considered to cause "irreparable injury."

As Appellants correctly point out, we must presume that public officials will discharge their duties lawfully and in good faith. *See Vandygriff v. First Savings and Loan Ass'n*, 617 S.W.2d 669, 673 (Tex. 1981); *Kimbrough v. Walling*, 371 S.W.2d 691, 692 (Tex. 1963);

*Eldorado Independent School District v. Becker*, 120 S.W.2d 476, 477 (Tex.Civ.App.--Austin 1938, writ dism'd). Here, Mendoza's deposition testimony supports this presumption. He specifically stated that the District "has no intention of filing this same case against this particular set of parents." The McIntyres' attorney then asked Mendoza, "If this conduct was criminal in '07, why wouldn't it be in '10?" Mendoza responded:

> Sir, one of the internal procedures is to review the case with the assistant district attorney. The assistant district attorney has dismissed these charges, and so therefore, filing the same type of charge unless there is some credible evidence that something has changed dramatically in the household, would be moot.

In addition, written warnings were provided to McIntyres before any truancy complaints were filed. Therefore, the McIntyres could have initiated the administrative process before the truancy complaints were even filed. Had the McIntyres pursued their administrative remedies, it must be presumed that the school administrators, the Superintendent, the Board of Trustees, and the Commissioner of Education would have all acted in accordance with the law. Similarly, should the District or its employees be presented with "credible evidence that something has changed dramatically in the household" in the future triggering another investigation, we must presume officials will act in accordance with applicable laws. Had the truancy charges proceeded in the justice court, the McIntyres could have defended the claims in court, and it must likewise be presumed that the justice court would have afforded them a fair trial, and ruled in accordance with the law.

Any relief the McIntyres sought with respect to injunctive relief from further litigation was inappropriate as to the District or the District employees because once the truancy complaints were filed, the District Attorney had the authority to dismiss the case. We thus conclude that the trial court erred in finding that the McIntyres were not required to exhaust administrative remedies before filing suit. Because the remaining state law claims against the

District should have been dismissed, we sustain Issue Two and reverse and render judgment in the District's favor.

## DISMISSAL OF STATE LAW CLAIMS AGAINST DISTRICT EMPLOYEES: ELECTION OF REMEDIES

In Issues Five, Six, Seven, and Eight, Appellants present various issues all in support of the argument that the trial court erred by refusing to dismiss the McIntyres' state law claims against the District employees. In Issue Five, Appellants argue that the trial court erred in denying their motion to dismiss, special exceptions and plea to the jurisdiction based on the election of remedies provision contained in Texas Civil Practice and Remedies Code Section 101.106. In Issue Six, Appellants complain that the trial court erred because the McIntyres failed to exhaust their administrative remedies.[4] Finally, in Issues Seven and Eight, Appellants contend that the trial court erred because the McIntyres' state law claims against District employees are barred by professional immunity and qualified immunity. Issue Five is dispositive on this subject.

A plea to the jurisdiction based on sovereign or governmental immunity challenges a trial court's jurisdiction. *See Miranda*, 133 S.W.3d at 226. We review the trial court's ruling *de novo*. *See id*. As originally enacted, Section 101.106 was entitled "Employees Not Liable After Settlement or Judgment," and stated:

> A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 TEX.GEN.LAWS 3242, 3305 (current version at TEX.CIV.PRAC.&REM.CODE ANN. § 101.106). Thus, the statute provided some protection for employees when claims against the governmental unit were reduced to judgment

---

[4] Section 22.0514 of the Texas Education Code requires the exhaustion of remedies before filing suit against a professional employee of a school district. *See* TEX.EDUC.CODE ANN. § 22.0514 (West 2012).

or were settled.  *See Mission Consolidated Independent School District v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008).  Under the original version, nothing prevented a plaintiff from pursuing alternative theories against both employees and the governmental unit through trial or other final resolution.  *See id.*  In 2003, as part of tort reform efforts, the Legislature amended Section 101.106.  *Id.* at 656-57.  Today, the relevant subsections read as follows:

> (a)  The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
>
> .    .    .
>
> (e)  If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.
>
> (f)  If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.[5]

TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(a), (e), (f)(West 2011).  Under the current election-of-remedies provision, a plaintiff is required to decide at the time of filing suit whether an employee acted independently and is solely liable, or whether the employee acted within the general scope of his or her employment, thereby making the governmental unit vicariously liable for the employee's acts.[6]  *See Garcia*, 253 S.W.3d at 657.  In doing so, the election of remedies

---

[5]  The District is a "governmental unit" as defined by Section 101.001(3) of the Texas Civil Practice and Remedies Code.  Likewise, Dr. Lorenzo Garcia and Mark Mendoza are "employees" of the District.  *See* TEX.CIV.PRAC.& REM.CODE ANN. §§ 101.001(2), (3).

[6]  Under Texas Civil Practice and Remedies Code Sections 104.001 and 104.002, State agencies are required to indemnify their employees for litigation expenses if the employee's actions were within the course and scope of his or her employment.  *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 104.001, 104.002.

provision is designed to reduce the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery. *See id*. "By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs." *See id.* In sum,

> [u]nder the [TTCA]'s election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only; (2) when suit is filed against both the governmental unit and its employee; or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit. When suit is filed against the employee, recovery against the governmental unit regarding the same subject matter is barred unless the governmental unit consents to suit. Because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually. [Internal cites omitted].

*Id*.

The District filed a motion to dismiss based on Section 101.106(e). The McIntyres counter that they can maintain their duplicative claims against both the District and the employees because they "do not seek damages from Mr. Mendoza for any state-law claim." This assertion is inconsistent with their pleadings. Their original petition alleged claims for malicious prosecution and violations of the due process and equal protection clauses of the Texas Constitution, and sought recovery of both actual and exemplary damages. In their first amended petition, they once again asserted claims for malicious prosecution. They also pursued claims for due process and religious liberty violations under the Texas Constitution and once again prayed for recovery of actual and exemplary damages. Finally, in the third amended petition, they pled state law claims for malicious prosecution, equal protection, due process, privacy, and religious liberty, and they sought an award of actual damages in the amount of $800,000, plus any

exemplary damages. All of the petitions included claims for malicious prosecution and sought damages. Therefore, the pleadings do not support the argument that they only seek declaratory and injunctive relief for their state common law tort claims.

Accordingly, we conclude the trial court should have granted the motion to dismiss under the election of remedies provision articulated in Texas Civil Practice and Remedies Code 101.106. We sustain Issue Five and reverse and render judgment in the District employees' favor. Because Issue Five is dispositive as to the McIntyres' state law claims, we need not address Issues Six, Seven, or Eight.

### DISMISSAL OF FEDERAL LAW CLAIMS AGAINST MENDOZA: QUALIFIED IMMUNITY

In Issues Three and Four, Appellants complain that the trial court erred in denying summary judgment with respect to the federal law claims asserted against Mendoza. Because the qualified immunity argument in Issue Four is dispositive, we begin by addressing that issue.

### Standard of Review

We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Our review is limited to consideration of the evidence presented to the trial court. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex.App.--Houston [14th Dist.] 2007, no pet.). When a summary judgment does not state or specify the grounds upon which it relies, we may affirm the judgment if any of the grounds presented in the summary judgment motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 556 (Tex.App.--San Antonio 2011, no pet.).

A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.

TEX.R.CIV.P. 166a(c).   To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not.  *See Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost National Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

### Statutory Inquiry

Section 1983 provides in relevant part: "[e]very person who, under color of any statute ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  42 U.S.C. § 1983 (1994).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

Initially we note that the deprivation of a right must be caused by the conduct of a person acting under the color of state law.  Here, Mendoza acted pursuant to Section 25.091(b) of the Texas Education Code which authorized him "to investigate each case of a violation of the compulsory school attendance requirements referred to [him]."  *See* TEX.EDUC.CODE ANN. § 25.091(b)(1).  There is no dispute that Mendoza initiated his investigation based on a report that the McIntyres and their children were in violation of the compulsory attendance laws.  Nor is there any dispute that the McIntyres reside within the District.  Therefore, the question is whether Mendoza is shielded from liability.

Qualified immunity is a judge-made doctrine. The justification for the doctrine is that public officials performing discretionary functions should be free to act without fear of retributive suits for damages except when they should have understood that particular conduct was unlawful. *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). That awareness depends, in large part, on the extent to which legal rules were clearly established when the official acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It follows that an inquiry into the reasonableness of a public official's conduct must focus both on what the official did (or failed to do) and on the state of the law at the time of the alleged act or omission. *Savard v. Rhode Island*, 338 F.3d 23, 28 (1st Cir. 2003)(en banc), *cert. denied*, 540 U.S. 1109, 124 S.Ct. 1074, 157 L.Ed.2d 895 (2004); *Iacobucci v. Boulter*, 193 F.3d 14, 21 (1st Cir. 1999). In the end, the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was "apparent" when undertaken. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The test for qualified immunity requires the court to engage in a two part inquiry: (1) whether a public official's conduct violated a constitutional or statutory right; and (2) whether the right was "clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, --- U.S. ---, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011); *see also Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011)(en banc). In determining whether a right was clearly established, courts look to whether the public official's actions were objectively reasonable in light of the law at the time of the challenged conduct. *See Morgan*, 659 F.3d at 370. The purpose of the qualified immunity doctrine is to shield government officials not only from personal liability, but from suit as well, "when their actions could reasonably have been believed to be legal." *Morgan*, 659 F.3d at 370; *see also Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815,

86 L.Ed.2d 411 (1985)("The entitlement is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial.").

Courts have discretion to decide which of the two prongs to address first, in the light of the particular circumstances. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Reviewing the second prong (objectively unreasonable conduct vel non ) first is often preferable, as it "comports with [the] usual reluctance to decide constitutional questions unnecessarily." [Citation omitted]. *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). To satisfy the second prong, the McIntyres had the burden of pointing to "controlling authority - or a robust consensus of persuasive authority - that defines the contours of the right in question with a high degree of particularity." [Internal quotation marks and citations omitted]. *Morgan*, 659 F.3d at 371-72. "Where no controlling authority specifically prohibits a defendant's conduct, . . . the law cannot be said to be clearly established. . . . [G]eneralizations and abstract propositions are not capable of clearly establishing the law." *Id*. at 372. While there need not be a decision directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).

Finally, even where the qualified immunity defense is raised in response to a Section 1983 claim in state court, it must still be evaluated under federal, and not state, law. *See Robinett v. Carlisle*, 928 S.W.2d 623, 625 (Tex.App.--Fort Worth 1996, writ denied), *cert. denied*, 522 U.S. 820, 118 S.Ct. 74, 139 L.Ed.2d 33 (1997). Although the test for qualified immunity under state law is whether the officer was acting in good faith, the test under federal law is one of objective reasonableness:

> Although the cases sometimes refer to the doctrine of qualified 'good faith' immunity, the test is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith.

- 25 -

We look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred. Thus, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'

[Citations omitted]. *Swint v. City of Wadley, Ala.,* 5 F.3d 1435, 1441-42 (11th Cir. 1993), *cert. denied*, 514 U.S. 1003, 115 S.Ct. 1312, 131 L.Ed.2d 194 (1995); *see City of Lancaster v. Chambers*, 883 S.W.2d 650, 655-56 (Tex. 1994).

### *"Shock the Conscience" Theory*

We now look to whether the McIntyres raised a fact issue regarding Mendoza's purported violation of a clearly established federal constitutional right. We begin by addressing Appellants' assertion that the McIntyres failed to create a fact issue with respect to their substantive due process claim. The McIntyres rely on a "shock the conscience" theory, claiming that Mendoza "committed perjury" by filing criminal charges that "he knew to be untrue," and by making up a non-existent criminal offense.

According to the McIntyres, there are "historical examples of this claimed liberty protection." As their first "historical example," of their shock the conscience theory, they rely on *Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999). In *Morris*, a teacher deliberately fabricated sexual abuse charges against a four-year-old student's father. *Morris*, 181 F.Ed at 671. The false charges resulted in a suit by the Texas Department of Protective and Regulatory Services to permanently terminate the father's parental rights.[7] *Id*. The court found that the teacher caused the "destruction of a family based on fabricated evidence." *Id*. at 668. Noting the existence of a "well established constitutional right to family integrity," the court concluded that the contours of that right left no doubt that a teacher was not "free to fabricate sexual abuse allegations

---

[7] The fabricated complaint also led to the father's loss of employment and the placement of the child into foster care. *Morris*, 181 F.Ed at 668.

against her student's parents." *Id*. at 671-72. The court also found that no teacher could have believed that such conduct was objectively reasonable. *Id*. at 675. Therefore, the court denied summary judgment on qualified immunity grounds and left it to the fact-finder to resolve the causation issue at trial, by determining the extent to which state officials relied on the teacher's misrepresentations in deciding to remove the child from her parents' custody. *Id*. at 672-73; *see also Roe v. Texas Dept. of Protective and Regulatory Services*, 299 F.3d 395, 412 (5th Cir. 2002)(restating the findings in *Morris* as in other words, an actual violation of the constitutional right to family integrity, resulting in a tangible loss, constituted a substantive due process violation, and noting that a key element of *Morris* and similar cases was that the government actor "had removed the child from its family home.").

Similarly, in *Cummings v. McIntire,* 271 F.3d 341, 346 (1st Cir. 2001), the First Circuit Court of Appeals held that a police officer's unprovoked and angry shove of a person who asked for directions while the officer was directing traffic, resulting in severe spinal injury, did not shock the conscience because, even if the officer unnecessarily used physical force, he did not do so maliciously and sadistically for the purpose of causing harm. *Cummings*, 271 F.3d at 345. In conducting their analysis, the court looked at the facts underlying other substantive due process claims: *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000)(a student was blinded in one eye when a coach intentionally struck him in the head with a metal weight); *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998)(rape by a police officer in connection with a car stop); *Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998)(a fifty-seven day unlawful detention in the face of repeated requests for release); *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998)(police officers aiding a third-party in shooting the plaintiff); *Johnson v. Glick*, 481 F.2d 1028, 1029-30 (2d Cir. 1973)(an intentional assault by a police

officer who struck a pretrial detainee twice in the head and threatened to kill him); and *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987)(a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her). *See Cummings*, 271 F.3d at 346 (stating, "A look at the facts underlying other substantive due process claims helps place this case into perspective and reinforces our conclusion that [the defendant's] conduct was not of constitutional dimension," and then listing the above summaries and case citations).

Here, the McIntyres failed to meet their burden as none of the alleged conduct shocks the conscience. The truancy complaints filed by Mendoza alleged violations of specific sections of the Education Code. The assistant district attorney in charge of truancy cases testified that the complaints were sufficient to state criminal offenses. He also testified that the complaints did not contain any false information.

There is no evidence of any tangible loss or injury to the McIntyres, nor is there any evidence that Mendoza intended to cause them harm or acted deliberately to injure them. Rather, the evidence demonstrates that Mendoza possessed at least a good faith belief that he was complying with his statutory duty to ensure that every child within his jurisdiction attends school and receives an education. *Kinzie v. Dallas County Hospital District*, 239 F.Supp.2d 618, 630 (N.D. Tex. 2003)(noting the requirement to prevail on a shock the conscience theory that "the conduct evince an intent to cause harm, or show a deliberate act to bring about the specific injury to the plaintiff").

### *Fundamental Liberty Interests*

Next, we address the McIntyres assertion that Mendoza violated their fundamental liberty interests by inquiring about the curriculum they were using in the home, and then by filing the

truancy complaints when they refused to provide him with such information. In *Leeper*, the Supreme Court specifically authorized inquiries into the curriculum of home schools. *See Leeper*, 893 S.W.2d at 440. Specifically, the Court affirmed a portion of the trial court's judgment which stated in relevant part:

> This judgment does not preclude the Texas Education Agency, the Commissioner of Education or the State Board of Education from suggesting to the public school attendance officers lawful methods, including but not limited to inquiry concerning curricula and standardized test scores, in order to ascertain if there is compliance with the declaration contained in this judgment. However, this judgment is not to be interpreted as requiring standardized tests in order for there to be compliance with the interpretation made by the court of [§ 21.033(a)(1) ]. The lawful powers of investigation by public school attendance officers and the constitutional rights of persons subject to such investigations are not affected by this judgment.

*Id.*

Section 25.091(b) of the Education Code vests certain authority in school district attendance officers. Included is the authority to: (1) investigate each case of a violation of the compulsory school attendance requirements referred to the attendance officer; (2) monitor school attendance compliance by each student investigated; (3) make a home visit or otherwise contact the parent of a student who is believed to be in violation of compulsory school attendance requirements; and (4) enforce compulsory school attendance requirements by filing truancy complaints. TEX.EDUC.CODE ANN. § 25.091(b). The McIntyres do not challenge the authority given to school attendance officers under Section 25.091(b). Instead, they appear to claim a fundamental right to be free of any state supervision or regulation concerning whatever education they choose to provide to their children in their home. They provide no support for such a right, much less sufficient support to show such a right is clearly established.[8] Therefore,

---

[8] The United States has long recognized that states have the power to regulate non-public schools:

> No question is raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils; to require that all children of

no genuine issue of material fact exists to defeat Mendoza's qualified immunity defense based on a violation of the McIntyres' fundamental liberty interests.

### *"Class of One" Theory*

In the McIntyres' third amended petition, they allege an equal protection violation based on discrimination against them "as a Class of One." A "class of one" theory is limited to cases where the evidence demonstrates "the existence of a clear standard against which departures, even for a single plaintiff . . . could be readily assessed," as opposed to those situations in which a government official is "exercising discretionary authority based on subjective, individualized determinations." *Enquist v. Oregon Department of Agriculture*, 553 U.S. 591, 602, 128 S.Ct. 2146, 2153, 170 L.Ed.2d 975 (2008).

Some forms of state action by their very nature involve discretionary decision-making based on a vast array of subjective, individualized assessments. In such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Here, the evidence does not suggest that the McIntyres were singled out and treated differently than other, similarly situated, parents. The Juvenile Case Manager for the Justice of the Peace Court where the truancy complaints were filed testified that since 2006, she had seen

---

proper age attend some school, that teachers shall be of good moral character and patriotic disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare.

*Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 534, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

four or five other cases involving home school situations. According to her, some of the parents responded to the filing of complaints by providing supplemental information to the court. This information was then provided to the District Attorney's Office. All but one of the other home school cases were dismissed prior to trial. As to the one case that went to trial, the judge allowed the parents more time to produce documentation demonstrating the validity of their home school. The parents in that case produced the documentation and the case was dismissed.

The record also demonstrates that Mendoza was acting within his discretionary, subjective, decision-making authority. Section 25.091(b) of the Texas Education Code authorized him "to investigate each case of a violation of the compulsory school attendance requirements referred to" him. *See* TEX.EDUC.CODE ANN. § 25.091(b). The method and scope of investigation are are not specified in the Code, nor does the Code specify what specific evidence is necessary to sufficiently demonstrate compliance with the compulsory school attendance requirements, or an applicable exemption to such requirements. Consequently, the investigation and ultimate decision to file truancy complaints were within Mendoza's discretion.

It is in this respect that *Leeper* provides guidance. While *Leeper* precludes using standardized test scores as a determining factor in deciding whether the McIntyres' home school fell within the private or parochial school exemption, nothing in *Leeper* -- or the Education Code for that matter -- precludes an attendance officer from requiring the McIntyres to produce evidence regarding their chosen curriculum. Mendoza's actions fell within his discretion and there is no evidence that he exceeded his authority or that the McIntyres were isolated as a "class of one." Thus, the McIntyres' equal protection claims against Mendoza are subject to qualified immunity.

Lastly, we address the portion of the McIntyres' petition seeking relief in connection with their "free exercise of religion" under the First Amendment. In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Old Order Amish and the Conservative Amish Mennonite Church challenged a Wisconsin compulsory school attendance statute which required children to attend school until the age of sixteen.[9] *Yoder*, 406 U.S. at 207. The plaintiffs argued that they had a First Amendment right to withhold their children from any type of institutional school beyond the eighth grade. *Yoder*, 406 U.S. at 213. The Supreme Court reiterated that there "is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education." *Id*. The court conducted a balancing test and ultimately concluded that, based on the unique facts of the case, the statute impermissibly infringed on the free exercise of religion without a compelling state interest. *Id*. at 234. *Yoder* is distinguishable because of the unique freedom of religion issues presented. In fact, the situation was so exceptional that the same treatment has never been extended to any other individual or religious group. *See Combs v. Homer-Center School District*, 540 F.3d 231, 249-52 (3rd Cir. 2008); *Mozert v. Hawkins County Board of Education*,

---

[9] While the Amish did not object to elementary education because their children must have basic skills to read the Bible, to be good farmers and citizens, and to deal with non-Amish people, they did object to formal high school education:

> [N]ot only because it places Amish children in an environment hostile to Amish beliefs with increasing emphasis on competition in class work and sports and with pressure to conform to the styles, manners, and ways of the peer group, but also because it takes them away from their community, physically and emotionally, during the crucial and formative adolescent period of life. During this period, the children must acquire Amish attitudes favoring manual work and self-reliance and the specific skills needed to perform the adult role of an Amish farmer or housewife. They must learn to enjoy physical labor. Once a child has learned basic reading, writing, and elementary mathematics, these traits, skills, and attitudes admittedly fall within the category of those best learned through example and 'doing' rather than in a classroom.

*Yoder,* 406 U.S. at 211, 92 S.Ct. at 1531.

827 F.2d 1058, 1067 (6th Cir. 1987)(noting that "*Yoder* rested on such a singular set of facts that we do not believe it can be held to announce a general rule").

No parents have ever prevailed in any reported case on a theory that they have an absolute constitutional right to educate their children in the home, completely free of any state supervision, regulation, or requirements. In post-*Yoder* opinions, the Supreme Court has held that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993); *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879, 890, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).

The McIntyres have produced no evidence that they are similarly situated to the Old Order Amish in *Yoder*. They have failed to raise a fact issue that a sincerely held religious belief was substantially burdened.

They do not have an "absolute constitutional right to home school." *See Jonathan L. v. Superior Court*, 165 Cal.App. 4th 1074, 81 Cal.Reptr.3d 571, 592 (Cal.App. 2008). Instead, they have a right to home school their children, but a home school will only meet the private or parochial exemption from the compulsory school attendance laws if it meets the criteria set out in *Leeper*.

Based on the foregoing analysis, we conclude that the McIntyres failed to raise a fact issue with respect to the violation of a clearly established constitutional right. Because Mendoza is entitled to qualified immunity, the trial court erred in denying his motion for summary judgment.[10] We sustain Issue Four and reverse and render judgment in favor of Mendoza on this

---

[10] We also note, that with respect to the McIntyres' malicious prosecution claim under Section 1983, they have failed to state a cause of action.

issue. Having determined that the McIntyres' federal claims against Mendoza should have been dismissed based on qualified immunity, we need not address the' absolute immunity claims in Issue Three.

### OBJECTIONS TO THE MCINTYRES' SUMMARY JUDGMENT EVIDENCE

Finally, in Issue Nine, Appellants maintain that the trial court erred in overruling several objections to the affidavits of Laura McIntyre. Because we have found in favor of Appellants on the issues above, we need not address their arguments in Issue Nine. Having sustained Issues One, Two, Four, and Five, we reverse and render judgment accordingly. The cause is remanded to the trial court for consideration of the claims remaining consistent with our opinion and judgment.

August 6, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.