FILED
14-0903
6/8/2015 2:47:08 PM
tex-5585819
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# No. 14-0903

## In the Supreme Court of Texas

CLINT INDEPENDENT SCHOOL DISTRICT,
*Petitioner*

v.

SONIA MARQUEZ HERRERA, CLAUDIA GARCIA, AND ALICIA GOMEZ,
FOR AND ON BEHALF OF THEIR MINOR CHILDREN,
*Respondents*

From the Eighth Court of Appeals at El Paso, Texas,
Cause No. 08-13-00092-CV, and
Cause No. 2012DCV05582, 205th District Court, El Paso County

## PETITIONER CLINT INDEPENDENT SCHOOL DISTRICT'S REPLY BRIEF ON THE MERITS

Juan J. Cruz
State Bar No. 00793570
jcruz@jca-law.com
Orlando "Jay" Juarez, Jr.
State Bar No. 24074506
ojuarez@jca-law.com
**J. CRUZ & ASSOCIATES, LLC**
216 W. Village Blvd., Suite 202
Laredo, Texas 78041
956-717-1300
956-717-0539 (fac.)

Brendan K McBride
State Bar No. 24008900
Brendan.mcbride@att.net
**THE MCBRIDE LAW FIRM**
425 Soledad, Suite 620
San Antonio, Texas 78205
210-472-1111
210-881-6752 (fac.)

*Attorneys for Petitioner,
Clint Independent School
District*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................ 1

INDEX OF AUTHORITIES ................................................................................. 2

SUMMARY OF THE ARGUMENT ..................................................................... 4

ARGUMENT AND AUTHORITIES ..................................................................... 9

   A.   **Parents' Pleadings Speak For Themselves; This Case Is Based On Allegations That the District Has Failed to Comply With The School Laws of the State.** ........................................................................................ 9

   B.   **School Districts Are Not Given Discretion to Provide Unequal Educational Opportunities Through the Intra-District Budgeting Process.** ........................................................................................................ 18

   C.   **The District Did Not and Cannot Waive Arguments About Subject Matter Jurisdiction.** ...................................................................................... 20

   D.   **The Pleaded Claims Fall Within the School Laws of The State; The Constitutional Exception Only Applies to Pure Questions of Law Arising Under the U.S. Constitution or Federal Law.** ................................ 22

   E.   **Parents Failed to Demonstrate Any Irreparable Harm From the Commissioner's Lack of Injunctive Power.** ............................................... 25

CONCLUSION & PRAYER ................................................................................. 27

CERTIFICATE OF SERVICE ............................................................................. 30

CERTIFICATE OF COMPLIANCE ................................................................... 30

PETITIONER'S SUPPLEMENTAL APPENDIX ............................................... 31

# INDEX OF AUTHORITIES

Page

**Cases**

*Dotson v. Grand Prairie Indep. Sch. Dist.,* 161 S.W.3d 289 (Tex. App.—Dallas 2005, no pet.)..................................................................................................................... 13

*Edgewood Indep. Sch. Dist. v. Paiz,* 856 S.W.2d 269 (Tex. App. – San Antonio 1993, no pet.)..................................................................................................................... 25

*Gibson v. Waco Indep. Sch. Dist.*, 971 S.W.2d 199 (Tex. App. – Waco 1998) *vacated on other grounds* 22 S.W.3d 849 (Tex. 2000).................................................................. 23

*Hicks v. Lamar Consolidated Indep. Sch. Dist.,* 943 S.W.2d 540 (Tex. App.—Eastland 1997, no writ) ........................................................................................................22, 23

*Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396 (Tex. App. – Houston [14th Dist.] 1999, no pet.)..................................................................................................... 23

*Janik v. Lamar Consolidated Indep. Sch. Dist.,* 961 S.W.2d 322 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ................................................................................... 23

*Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist. (Edgewood VI)*, 176 S.W.3d 746 (Tex. 2005)............................................................................................................... 15

*Poole v. West Hardin County Consolidated Indep. Sch. Dist.,* 385 S.W.3d 52 (Tex. App.—Beaumont 2011), *rev'd on other grounds,* 384 S.W.3d 816 (Tex. 2012)............................ 23

*Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993) ....................... 21

*Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351 (Tex. 2005).......................................... 20

*West Orange-Cove Indep. Sch. Dist. v. Alanis (Edgewood V),* 107 S.W.3d 558 (Tex. 2003) 14, 15

**Statutes**

TEX. EDUC. CODE §42.152........................................................................................... 9

TEX. EDUC. CODE §1.002....................................................................................passim

TEX. EDUC. CODE §11.13 (repealed)........................................................................... 21

TEX. EDUC. CODE §39.112................................................................................... 24

TEX. EDUC. CODE §42.001..................................................................................... 9

TEX. EDUC. CODE §7.057.................................................................................. 5, 12

TEX. EDUC. CODE §7.057(d) ............................................................................... 13

TEX. EDUC. CODE §7.057(f)(2) ..............................................................12, 17, 21

**Constitutional Provisions**

Tex. Const. art. VII, §1 ....................................................................................... 9

## SUMMARY OF THE ARGUMENT

Applying the law to this case – as it has been pleaded by Parents – it is readily apparent that the lower court's opinion in this case creates conflict and confusion in Texas jurisprudence of the very sort sought to be prevented by Legislature's creation of an administrative review process for claims challenging the administration of Texas's public schools. The plea to the jurisdiction was properly sustained by the trial court because Parents failed to exhaust their administrative remedies, precluding the courts, including this Court, from exercising subject matter jurisdiction over Parents' claims. Tellingly, Parent's arguments now are not about the case they pled. But reviewing the pleadings sheds enormous light on the nature of this case – it is an attempt to assert a claim that, even if true, can be addressed and remedied through the administrative process without having to consider whether it incidentally thwarts the Legislature's compliance with the requirements of the Texas Constitution.

First, Parents argue that they have a direct constitutional claim against the District and that the District is misconstruing cases indicating that the Legislature and not the District is charged with complying with the Texas Constitution's Education Clause. Tellingly, Parents' own pleadings belie their argument to this Court. Despite what they argue now, the pleadings in this case characterize the District's actions as thwarting "*the Legislature's* implementation of its constitutional mandate." (CR 104) A complete review of the pleadings shows that the essence of this claim is that the District has failed to properly "weight" certain factors as part of a mandatory "state

4

funding formula" for intra-district budgets that *the Legislature* requires as part of its implementation of the Legislature's constitutional mandate. Parents specifically plead that this mandate is imposed on the Legislature through certain sections of the Education Code, and it carries out that mandate through section 1.002 of the Texas Education Code.

This case is therefore *principally* pleaded as a violation of the school laws of the state governing the administration of public education. If – as Parents' own pleadings claim – the Legislature has in place rules for "weighting" certain factors to ensure that school funding complies with the Legislature's constitutional mandate as part of section 1.002, then the administrative process obviously provides a remedy by merely enforcing those rules without the need for a direct constitutional claim against the District.

Second, Parents argue that there are no regulations or statutory enactments to which their constitutional claims can be ancillary – taking the position that the Legislature has entrusted its constitutional mandate to the discretion of individual school districts through a statutory and regulatory void. It has not. Even if the pleadings were amended to remove express references to section 1.002, it would not cure the jurisdictional defects in this case. Whether Parents' pleadings relied on it or not--there is, in fact, a statute enacted by the Legislature to ensure that school districts and other educational institution provide an equal educational opportunity to all students *within* their geographical boundaries. TEX. EDUC. CODE §1.002. Contrary

to Parents' arguments to this Court now, there is no statutory void delegating discretion to school districts to provide unequal educational opportunities to different students. There is a statute that provides just the opposite – and it is the very statute on which Parents rely in their pleadings. Since this is a matter that arises under the school laws of the state, it is therefore subject to the exhaustion of administrative remedies under TEX. EDUC. CODE §7.057.

Parents' argument that the District somehow waived two arguments about subject matter jurisdiction related to the plea to the jurisdiction is both factually and legally erroneous. Parents are factually mistaken because the District's briefing in the El Paso Court of Appeals expressly does raise both arguments. Parents are legally mistaken because the issues in this case relate to subject matter jurisdiction and cannot be waived. Even if the District had raised no argument at all about subject matter jurisdiction, a court cannot bootstrap its way into subject matter jurisdiction through common law doctrines like waiver or estoppel.

Addressing those two issues on the merits, they likewise demonstrate that the trial court correctly dismissed this case and that the court of appeals' erroneous opinion creates confusion and conflicts in Texas law. Parents cannot evade the administrative process that would otherwise apply to their claims challenging the District's administration of its budgets by artfully pleadings those claims as constitutional because: (1) the constitutional exception to the exhaustion-of-remedies doctrine only applies to pure questions of *federal* constitutional law brought in federal

6

courts; and, (2) it does not apply where there are factual disputes that would have to be resolved. There certainly is a factual dispute about whether the District failed to provide an equal educational opportunity to all students within the District's geographical boundaries as required by section 1.002 of the Education Code. This is not a pure question of law arising under the U.S. Constitution or federal law. Parents' were required to pursue the administrative process first.

Finally, Parents failed to demonstrate any irreparable harm from the Commissioner's lack of injunctive power. They argue that every day that passes without adjusting all of the school budgets in the manner they demand will cause lost educational opportunities. However, even in their merits briefing, Parents' argument depends on the notion that they are currently entitled to *all* of the relief they are requesting before there has been any consideration of the merits. The only way that alleged irreparable harm would be prevented would be through a preliminary, temporary injunction that forces the District to recalculate and reallocate all of its current budgets in compliance with Parents' demands. No court could grant such injunctive relief because temporary injunctions are intended to preserve the status quo, not completely change it on the assumption that the plaintiffs will prevail.

The only reason the District raised the Commissioner's power to appoint a board of managers was in anticipation of the argument Parents made in the court of appeals that they were somehow irreparably harmed by the Commission's lack of power to impose a *permanent* injunction. No permanent injunction would be necessary

7

because the Commissioner has other powers by which it can compel a district to comply with Texas law. Those powers are in fact more extensive than a court's power to issue a permanent injunction. Thus, Parents failed to demonstrate that the Commissioner's lack of injunctive power would cause any irreparable injury. They could not get a temporary injunction from any court that grants them the preliminary relief that would be necessary to prevent the harm they claim will occur, and they can get far more from the Commissioner should they prevail in the administrative process than they could get from a permanent injunction in district court.

## ARGUMENT AND AUTHORITIES

**A.    Parents' Pleadings Speak For Themselves; This Case Is Based On Allegations That the District Has Failed to Comply With The School Laws of the State.**

It is apparent from Parents' responsive brief on the merits that one of the central questions for the Court to resolve is whether Parents have alleged the District has failed to comply with statutes, rules or regulations from TEA or the Legislature that apply to the District's allocation of funds between schools. If so, then *ipso facto* the enforcement of those statutes, rules or regulations through the administrative process provided to Parents would remedy any harm and obviate any effect such non-compliance, if any, would have on the Legislature's implementation of its constitutional mandate.

Fortunately this Court need not depend on the parties' arguments because the pleadings speak for themselves. Though Parents' arguments to the Court now are predicated on the assumption that they have not alleged any violation of statutes, rules or regulations, their argument now is the exact opposite of what was pleaded in the district court when this case was dismissed. Attached for the Court's convenience as an appendix to this Reply is a copy of Parents' Second Amended Petition for Declaratory Judgment, Temporary Injunction, and Permanent Injunction. Parents' principal theory is that intra-district budgeting is governed by a "state funding formula" implemented to guarantee the Legislature complies with its constitutional mandate, and the District's alleged wrongdoing is its alleged failure to apply or adhere

to this mandatory "state funding formula" for the "weighting" of certain factors in intra-district budgeting. Parents pled, in relevant part, as follows:

15. There are no apparent extenuating factors in the population of the respective campuses to justify this disparity. In fact, the opposite is true. The Education Code outlines several factors to consider in equalizing the distribution of funds to various districts, based on the population of higher-need students in each district. *See* TEX. EDUC. CODE §§42.001 *et seq.*

16. One of these weighting factors is for the number of students in bilingual education. *Id.* §42.153 . . .

17. Another weighted factor considered in state funding is the number of "economically disadvantaged" students at a high school. *See* TEX. EDUC. CODE §42.152 . . .

18. Any disparity based on these weighted factors for equitable funding would show more expenditures per student for Mountain View High School and Horizon School, due to their higher percentage of these students. In fact, the disparity is reversed, with Clint High School receiving a disproportionate share of the expenditures per student.

\* \* \*

29. The Texas legislature has created formulas for equalization of property tax revenue across districts based on tax effort, "weighted" student attendance counts, and property wealth per "weighted" student. These formulas are to implement Tex. Const. art. VII, §1 and distribute funds to Clint ISD.

\* \* \*

32. Further, the District's distribution scheme results in a system that is not "efficient," "adequate," or "suitable" as mandated by the Texas Constitution and implemented by the state legislature.

\* \* \*

34. The Texas Education Code re-affirms this emphasis on access and opportunity:

10

*An educational institution undertaking to provide education, services, or activities to any individual within the jurisdiction or geographical boundaries of the educational institution shall provide equal opportunities to all individuals within its jurisdiction or geographical boundaries pursuant to this code. Tex.Educ.Code [sic] §1.002.*

\*     \*     \*

36. Clint ISD's intra-district funding does not meet constitutional **or statutoy [sic] standards**.

\*     \*     \*

39. Thus, Clint ISD has thwarted **the Legislature's implementation of its constitutional mandate** "to establish a make suitable provision for the support and maintenance of an efficient system of public free school" so as to guarantee a "general diffusion of knowledge . . . essential to the preservation of the liberties and rights of the people."

\*     \*     \*

44. Plaintiffs are entitled to a declaratory judgment and relief thereunder concerning Defendant's violation of the Texas Constitution, specifying the rights of their children, namely, that Clint ISD has failed and refused, and continues to fail and refuse, to provide Plaintiffs' children and those similarly situated with equal education for all students at a comparable grade level, **appropriately weighted according to the state funding formula**, and thereby has denied, and continues to deny, those children their right to a suitable and efficient system of public free schools . . .

\*     \*     \*

45. Because of Clint ISD's on-going violation of their children's rights, Plaintiffs are entitled to temporary and permanent injunctive relief against Defendant from failing and refusing to provide their children and those similarly situated with equal education funding for all

11

> students at comparable grade levels, ***appropriately weighted according to the state funding formula.***

(Appendix D at 4-12, CR98-107, emphases added).

Try as they might, Parents cannot run from these pleadings. Parents' theory of this case is that the District failed to comply with certain "weighting" factors imposed on the District under a "state funding formula" intended to ensure that the school system created by the Legislature complies with the Legislature's constitutional mandate as implemented through section 1.002 of the Texas Education Code.

There is definitely a factual dispute about whether the complex budgeting process undertaken by the District properly considered all applicable factors in arriving at its intra-district budgets, which is addressed below. But setting that aside, it is clear from the pleadings that Parents' claim is based principally upon the District's alleged failure to comply with "constitutional and statutoy [sic] standards" that are implemented through a "state funding formula" applying these "weighted" factors and that the District's alleged failure to follow this state funding formula has thwarted *the Legislature's* attempt to meet its constitutional mandate.

The case is before this Court solely on the issue of subject matter jurisdiction. Assuming arguendo that this claim as alleged is true, then Parents would receive the remedy they seek by pursuing the administrative process and obtaining an administrative adjudication of their claim that the District has failed to comply with these state funding standards. Necessarily, that would render the constitutional effect

of that non-compliance on the Legislature's attempt to meet its constitutional mandate moot, since the enforcement of this statutory state funding standard upon which Parents' pleadings are based would fix the alleged violation and fulfill the Legislature's constitutional obligations.

Parents' pleadings speak for themselves. Though they artfully try to plead a violation of the Texas Constitution, this case is based on Parents' theory that the District violated a mandatory funding standard intended to implement section 1.002 of the Texas Education Code, which in turn has thwarted the Legislature's efforts to comply with *its* Constitutional mandate. As such, Parents' claim involves the enforcement of the school laws of this state, and it must be addressed first through the mandatory administrative process created under section 7.057. As explained in the District's Brief on the Merits, that process includes first bringing the grievance to the attention of the District through the grievance process provided by the board policy FNG(Series), and if still unsatisfied, pursue the grievance thereafter with the Commissioner. Only after this process may Parents invoke the jurisdiction of the courts. TEX. EDUC. CODE §7.057(d).

The complaint by Parents in this case most certainly embraces a matter properly belonging to the administration of the school laws of this state. The phrase "school laws of this state" is defined to include all statutes contained in titles 1 and 2 of the education code and all "rules adopted under those titles." TEX. EDUC. CODE §7.057(f)(2). As noted above, the allegation here is that the District failed to properly

"weight" certain factors in making funding decisions that violate formulas enacted in furtherance of section 1.002 of the Education Code (applicable to any "educational institution" and requiring equal educational opportunities *'within'* the geographical bounds of the institution). As such, Parents were required to first pursue their administrative remedies with the District and Commissioner before the district court could have subject matter jurisdiction under TEX. EDUC. CODE §7.057(d).

The court of appeals' opinion creates confusion and conflict in Texas law by allowing parties to artfully plead a theory that a District has violated school laws as implicating a constitutional violation in order to avoid following the mandatory administrative process. *As pled by Parents*, the constitutional allegation is ancillary to Parents' claim that the District failed to properly "weight" factors required by the "state funding formula" and violated the requirements of section 1.002. The opinion of the lower court in this case conflicts with opinions from several courts that have held that a party is not exempt from exhausting administrative remedies where they plead a constitutional claim that is ancillary to an allegation that a district has violated school laws. *See e.g. Jones v. Clarksville Indep. Sch. Dist.,* 46 S.W.3d 467, 474 (Tex. App. – Texarkana 2001, no pet.); *El Paso Indep. Sch. Dist. v. McIntyre,* No. 08-11-00329-CV, 2014 WL 3851313 at *9 (Tex. App. – El Paso Aug 6, 2014, pet. filed) (*citing Dotson v. Grand Prairie Indep. Sch. Dist.,* 161 S.W.3d 289, 292 (Tex. App. – Dallas 2005, no pet.)).

Parents argue that – despite their pleadings – they are actually suing the District for failing to provide an adequate education in violation of the Texas Constitution in

an area of school finance in which constitutional compliance has been delegated by the Legislature entirely to the discretion of individual school districts. *If* that were the claim they had pleaded, it would raise the very interesting question of whether aggrieved parties can bring individual lawsuits against different districts setting potentially different guidelines for what constitutes compliance with *the Legislature's* constitutional mandate. That is not an issue the Court need address, since the pleadings demonstrate that Parents' allegations are based on enforcement of school laws of the state, and their constitutional allegations are merely ancillary or incidental to those claims. However, far from "dubious" as Parents suggest, this Court has itself understood the structure of Texas school law vis-à-vis the constitutional mandate to provide an adequate free public education system and the "general diffusion of knowledge" in a very similar manner as described in the District's Brief on the Merits. The Legislature has not entrusted compliance with that constitutional mandate to the discretion of individual districts. That mandate resides solely with the Legislature – as it must.

This is apparent from the Court's opinion in *West Orange-Cove Indep. Sch. Dist. v. Alanis (Edgewood V),* 107 S.W.3d 558 (Tex. 2003). The Court was careful to explain that it was not to be understood as imposing any part of that constitutional mandate to provide for the general diffusion of knowledge directly on individual school districts:

[W]e do not hold that school districts have a constitutional duty to

provide for a general diffusion of knowledge. The districts' obligation is imposed by the Legislature, not the Constitution . . . As we have explained, the Legislature has chosen to make suitable provision for a general diffusion of knowledge by using school districts, and therefore the State cannot be heard to argue that school districts are free to choose not to achieve that goal. If they were, the Legislature's use of districts to discharge its constitutional duty would not be suitable, since the Legislature would have employed a means that need not achieve its end.

*Id.* at 584. Thus, even if Parents' characterization of their pleadings were correct and this case were not pled based on regulations or statutes governing intra-district funding, that would be a matter Parents would need to challenge with the Legislature, which solely carries the responsibility for setting up a system of school districts to fulfill *the Legislature's* constitutional mandate. Regardless, as explained in section B, *infra.*, the Legislature *has* enacted a statute that governs equal educational opportunities within a district.

In light of this Court's explanation of the relationship between the Legislature and its school districts, Parents' argument about the framers' intent shows its flaws. Parents argue that there is no evidence that the framers of the Texas Constitution meant to distinguish between the Legislature and school districts under the Education Clause. However, the school districts are *not* distinct from the Legislature. They exist because the Legislature chose to "make suitable provision for a general diffusion of knowledge by using school districts" and they are the device through which the Legislature "discharges[s] *its* constitutional duty." *Edgewood V* at 584 (emphasis added). This notion was reinforced in the Court's subsequent opinion in *Neeley v. W.*

*Orange-Cove Consol. Indep. Sch. Dist. (Edgewood VI)*, 176 S.W.3d 746 (Tex. 2005), where the Court again emphasized that it was the Legislature's obligation to provide a "suitable" system, and if it chose a system that provided discretion to school districts to violate the Education Clause, the system itself would be unsuitable:

> [W]e indicated in our prior opinion in this case that if the funding system were efficient so that districts had substantially equal access to it, and the education system was adequate to provide for a general diffusion of knowledge, *but districts were not actually required to provide an adequate education*, "the Legislature's use of districts to discharge its constitutional duty would not be suitable, since the Legislature would have employed a means that need not achieve its end."

*Edgewood VI* at 793 (*quoting Edgewood V*)(emphasis added). Clint ISD's position is entirely consistent with this Court's expressed understanding that – for purposes of constitutional compliance – there is no distinction between the Legislature and the school districts through which it chooses to carry out its mandate.

Even assuming arguendo that such a regulatory/statutory void were created by the Legislature, it is reasonable to predict that chaos would ensue if different courts and different juries began crafting different standards for what does and does not meet the Legislature's constitutional mandate. Each case would have its own version of what specifically would be required to fill this alleged regulatory/statutory void in the Legislature's school finance system. There would potentially by conflicting standards governing intra-district budgeting applied on a case-by-case basis between different districts. In fact, there may even be several suit against the same school district brought by Plaintiffs with different ideas of how funds should be allowed.

That chaos would be multiplied if parents with different grievances about the intra-district budgeting of the same district could get conflicting preliminary injunctions as Parents planned to do in this case. *If* Parents had pled there was no statutory or regulatory provision requiring equal educational opportunities in the intra-district budgeting process (and they did not) then the Legislature would be the proper defendant for a pure constitutional allegation that the State's system for determining intra-district budgets was inadequate to meet the Legislature's constitutional mandate.

Of course, this is all academic because the Parents' allegations in this case are predicated on the theory that the Legislature *has* provided a system to ensure equal opportunities in furtherance of its constitutional mandate through TEX. EDUC. CODE §1.002 (applicable to any public "educational institution"), and the "state funding formula" on which Parents' central factual allegations are based. But even if the Legislature had not, as Parents now try to argue, the proper defendant to sue for failing to meet its constitutional mandate would be the Legislature rather an individual district.

**B.    School Districts Are <u>Not</u> Given Discretion to Provide Unequal Educational Opportunities Through the Intra-District Budgeting Process.**

Even if Parents' pleadings could reasonably be construed as they now argue (or amended to take out express references to section 1.002 of the Education Code), Texas courts would still lack subject matter jurisdiction over this dispute. Setting aside that their position is inconsistent with their pleadings, Parents' argument that

school districts have been given discretion by the Legislature to violate the Education Clause of the Texas Constitution through unequal intra-district financing is legally erroneous.

To the contrary, the Legislature has enacted a statute to ensure that a school district in Texas, and any other "educational institution" in this state, provides equal educational opportunities to every student within each districts' geographical boundaries. Not surprisingly, that statute is TEX. EDUC. CODE §1.002 – the very section relied on as the basis for this claim in Parents' pleadings. The statute provides:

> An educational institution undertaking to provide education, services, or activities to any individual within the jurisdiction or geographical boundaries of the educational institution shall provide equal opportunities to all individuals within its jurisdiction or geographical boundaries pursuant to this code.

TEX. EDUC. CODE §1.002. Since this statute is part of the "school laws of the state" under section 7.057, Parents were obligated to first exhaust their administrative remedies before attempting to invoke the subject matter jurisdiction of the courts. TEX. EDUC. CODE §7.057(f)(2).

Neither of the requests Parents make in this Court will remedy their jurisdictional problem. Even if the Court were to construe Parents' reliance on section 1.002 in their pleadings as merely "background" information, it would not change the fact that school districts do not have the discretion to deny equal educational opportunities to students within the geographical bounds of the district,

19

nor that the Legislature *has* addressed this matter under Title 1 of the Education Code by the passage of section 1.002.

An artful amendment to Parents' pleadings to remove any express reference to section 1.002 will not cure this problem for them, either. Parents' argument entirely depends on the notion that the Legislature has entrusted its constitutional mandate in matters of intra-district budgeting entirely to individual school districts. Through the passage of section 1.002, the Legislature plainly has not given school districts the discretion to provide unequal educational opportunities to different students within a district. This is a matter the Legislature has regulated under Title 1. It is a matter that must first be addressed in the administrative process.

### C. The District Did Not and Cannot Waive Arguments About Subject Matter Jurisdiction.

As explained in the District's Brief on the Merits, the court of appeals' opinion creates two other conflicts in Texas law related to the constitutional exception to the exhaustion of remedies doctrine. Specifically: (1) the constitutional exception does not apply when the underlying case involves disputed facts, and (2) the exception only applies to challenges based on the U.S. Constitution brought in federal courts. As anticipated, Parents have tried to argue that these two issues were waived because the District did not argue them in the court of appeals. Parents are both factually *and* legally mistaken. These issues were raised in the lower court and could not be waived anyway because they concern subject matter jurisdiction.

Parents' brief largely ignores both of these errors in their waiver argument, which were pointed out in the District's brief. First, these two issues were expressly raised in the District's brief to the court of appeals. The District's argument that the case involved disputed facts that precluded application of the constitutional exception was expressly raised on pages 8 and 9 of Appellant's Brief.[1] The District also expressly raised the argument that the constitutional exception to exhaustion of remedies can only be applied to federal constitutional claims at page 13, note 5, where the District specifically cited some of the same cases cited in its briefing to this Court for the proposition that "[t]he constitutional exception is usually limited to cases in which a party has asserted a federal constitutional claim or a claim under Title 42. . ." Thus, Parents' argument that these arguments were not raised in the lower court is factually mistaken.

Second, Parents' cite a case that generally discusses waiver of points on review not raised in the court of appeals, but wholly ignores the long line of black-letter Texas law discussed in the District's brief demonstrating that arguments about subject matter jurisdiction, including – specifically – the failure to exhaust administrative remedies, cannot be waived and can be raised *sua sponte*. Texas law is clear that a court cannot fashion its own subject matter jurisdiction through waiver or estoppel. *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 354 (Tex. 2005). In fact, a court can find a

---

[1] For the Court's convenience, a copy of relevant excerpts of Appellant's Brief filed in the court of appeals in this case is attached hereto as Appendix E.

lack of subject matter jurisdiction on its own even if *no* argument is made regarding the lack of jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993).

The District both did not and cannot waive its arguments about the lack of subject matter jurisdiction over Parents' claims.

### D. The Pleaded Claims Fall Within the School Laws of The State; The Constitutional Exception Only Applies to "Pure Questions of Law" that Arise Under the U.S. Constitution or Federal Law.

As set forth above, Parents' theory of this case is that Texas school districts are bound to follow a "state funding formula" for intra-district budgeting as part of the Legislature's attempt to implement its constitutional mandate. Though Parents attempt to characterize their reliance on TEX. EDUC. CODE §1.002 as purely "background" information, the truth is that Section 1.002 *does* apply to any "educational institution," and *does not* exempt its application to intra-district budgeting decisions. TEX. EDUC. CODE §1.002. Parents strain to avoid their own pleadings, but it is clear from those pleadings that their theory of this case is that the Legislature *has* provided a statutory framework for intra-district funding to ensure equal educational opportunities through the passage of Section 1.002 and the "state funding formula" that is the source of their factual arguments about how the District has failed to provide an equal opportunity. Moreover, it is clear that section 1.002 forecloses any discretion for a school district to provide unequal educational opportunities within its boundaries.

22

Parents' argument that the District is trying to force *all* claims against a school district into the administrative process whether they are subject to it or not is little more than a Straw Man. To the contrary, the District pointed out that there are a variety of claims against school districts that do not fall within the scope of school administrative laws subject to the exhaustion of remedies requirement. (BOM at 22-23) However, since *this* case arises out of matters covered by Section 1.002 of the Education Code, and alleged violation of a state funding formula applicable to intra-district funding, it arises under the "school laws of the state." The Legislature expressly defined those laws to include Titles 1 and 2 of the Education Code and "rules adopted under those titles." TEX. EDUC. CODE §7.057(f)(2). Parents' claim is therefore subject to the exhaustion of remedies under Section 7.057(d).[2]

Once a claim is subject to administrative remedies, there is a constitutional "exception," but it only applies to "purely constitutional" claims that are solely questions of law. *See Hicks v. Lamar Consolidated Indep. Sch. Dist.,* 943 S.W.2d 540, 542 (Tex. App. – Eastland 1997, no writ). When a case involves only a "purely" constitutional question, it is unnecessary to first exhaust administrative remedies "because of the rule that obviates that necessity where *only* questions of law are concerned." *Id.* (emphasis in original). But when questions of fact are mixed with the

---

[2] Since the claims at issue implicate a statute that falls within the definition of the "school laws of the state" under the current statute, section 7.057, the District's argument does not depend on subjecting parents claims to a broader standard under the repealed section 11.13. Parents' attempt to distinguish several cases on that ground is inapposite.

purely constitutional questions, as they are in this claim regarding the complex factors that went into the District's decisions regarding intra-district funding of its schools, "it is necessary to first exhaust administrative remedies." *Id.* ; *see also McIntyre,* 2014 WL 3851313 at \*9; *see also Poole v. West Hardin County Consolidated Indep. Sch. Dist.,* 385 S.W.3d 52 (Tex. App. – Beaumont 2011), *rev'd on other grounds,* 384 S.W.3d 816 (Tex. 2012); *Janik v. Lamar Consolidated Indep. Sch. Dist.,* 961 S.W.2d 322, 323 (Tex. App. – Houston [1ˢᵗ Dist.] 1997, pet. denied). As explained in the Brief on the Merits, there is a complicated factual dispute about whether the District properly weighted all factors in deciding how to allocate its funds between campuses and is providing an equal educational opportunity under Section 1.002. (BOM at 36-39)

Moreover, this constitutional exception only applies to claims under the U.S. Constitution or arising under federal law and brought in federal court. Again, the District's position is not that all claims against a school district are subject to administrative exhaustion, and Parents' argument to the contrary is a Straw Man. However, where – as here – those claims arise out of the administration of the school laws of the state within the scope of section 7.057, artfully pleading them as violations of the Texas Constitution will not trigger the constitutional exception because that exception only applies to claims under the U.S. Constitution or federal law brought in federal courts. *See e.g. Hicks*, 943 S.W.2d at 542; *Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 402 (Tex. App. – Houston [14ᵗʰ Dist.] 1999, no pet.); *Gibson v. Waco Indep. Sch. Dist.*, 971 S.W.2d 199, 202 (Tex. App. – Waco 1998) *vacated on other grounds* 22

S.W.3d 849 (Tex. 2000); *Janik*, 961 S.W.2d at 323-24.

### E. Parents Failed to Demonstrate Any Irreparable Harm From the Commissioner's Lack of Injunctive Power.

There is no irreparable harm from the Commissioner's lack of injunctive powers because there is no legal basis for concluding Parents could obtain a temporary injunction to prevent the harm they claim is irreparable. Parents cannot and do not dispute that a temporary injunction is designed to preserve the status quo. Parents' primary response is that the District has somehow misstated or misrepresented the injunctive relief sought by Parents and that they are not seeking a preliminary temporary injunction that would upset the status quo. Their pleadings and even their argument to this Court say otherwise.

The "irreparable harm" Parents present is the harm from lost educational opportunities if the District does not recalculate its intra-district budgets. The only way a temporary injunction would prevent that harm is if the District were ordered to adjust all of its budgets in the manner demanded by Parents in a preliminary injunction before there had been any adjudication on the merits. That is not the preservation of the status quo, and thus could not be accomplished through a temporary injunction anyway. Hence, the Commissioner's inability to issue a temporary injunction is not the cause of any irreparable harm.

Parents' pleadings confirm that the temporary injunction they would seek would be an order compelling the District to recalculate its intra-district budgets —

which is also the ultimate relief Parents seek in this case. In their pleading, they request a temporary injunction under which the District would be "compelled to provide Plaintiffs' children and those similarly situated an equal amount of education funding as provided for all students at a comparable grade level, appropriately weighted according to the state funding formula." (App. D at 12; CR 106)

As explained in the Brief on the Merits, it is an abuse of a trial court's discretion to enter an injunction that reverses the status quo and, in so doing, provides the plaintiff the complete relief it seeks before the merits of the case have been adjudicated. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004); *Edgewood Indep. Sch. Dist. v. Paiz*, 856 S.W.2d 269, 271 (Tex. App. – San Antonio 1993, no pet.). Parents could never lawfully obtain the injunctive relief for which they pray. Since no court could grant injunctive relief that would prevent the harm Parents' claim will occur, no irreparable harm results from the Commissioner's lack of injunctive power.

To the extent Parents try to allege irreparable harm because the Commissioner lacks the power to issue a *permanent* injunction, their argument also fails for obvious reasons. As described in detail above, the Commissioner has *far more power* to permanently correct violations of state law than a court would have with its power to issue a permanent injunction. Districts are not free to ignore adjudications by the Texas Education Agency and if they try, the Commissioner has the power to appoint a board of managers to take over virtually every aspect of the management of the District if necessary – including taking over the budgeting process. *See* TEX. EDUC.

26

CODE §§7.057, 39.112 (b)(suspending the power of the board of trustees and expressly empowering the appointed "board of managers" to "amend the budget," among other things). No court could accomplish with a permanent injunction the level of legal compliance the TEA has the power to facilitate by virtue of the school laws of the state.

The "irreparable harm" exception to the exhaustion of administrative remedies doctrine does not apply because there is no demonstrable harm that would result in this case from the Commissioner's lack of injunctive powers.

**CONCLUSION & PRAYER**

Review is warranted because the court of appeals' opinion in this case reveals or creates conflicts in Texas law regarding the orderly disposition of claims against school districts arising out of the implementation of laws governing school administration. Not only have Parents pled this case as based on the school laws of the state, but even if they were to artfully amend or construe their pleadings, the Legislature has not given discretion to school districts to provide unequal educational opportunities to different students within a district's geographical boundaries. The statute limiting districts' discretion is part of Title 1 of the Texas Education Code, and is therefore one of the "school laws of the state." Parents sued the District for alleged failure to abide by the school laws of the state without first exhausting their administrative remedies as required by section 7.057 of the Texas Education Code.

The constitutional claim exception to the doctrine of exhaustion of

27

administrative remedies is not applicable to Parents' claims for two reasons: (1) Parents' claims involve complicated issues of fact rather than the type of purely legal questions for which the constitutional exception was intended; and, (2) the claims at issue are based solely on Texas school law and the Texas Constitution, rather than the federal constitution, and the exception only applies when a party asserts a federal constitutional claim in a federal court.

Finally, this is not an instance where Parents have shown they would suffer irreparable harm as a result of the Commissioner's lack of injunctive power to maintain the status quo. The harm Parents claim would not be prevented by maintaining the status quo, which is the proper function of a preliminary injunction. Thus, the Commissioner's lack of injunctive power is not the cause of the harm Parents claim will be irreparable.

Clint Independent School District respectfully requests that this Court grant the Petition for Review, and upon consideration of the issues, reverse the judgment of the Eighth Court of Appeals, and render judgment for Petitioner reinstating the trial court's dismissal of Parents' claims based on their failure to exhaust administrative remedies under section 7.057 of the Texas Education Code.

Respectfully submitted,

_____
State Bar No. 00793570
Orlando "Jay" Juarez, Jr.
State Bar No. 24074506
**J. CRUZ & ASSOCIATES, LLC**

28

216 W. Village Blvd., Suite 202
Laredo, Texas 78041
jcruz@jca-law.com
ojuarez@jca-law.com
Telephone: (956) 717-1300
Facsimile: (956) 717-0539

and

Brendan K. McBride
State Bar No. 24008900
Brendan.McBride@att.net
**THE MCBRIDE LAW FIRM**
425 Soledad, Suite 620
San Antonio, Texas 78205
Telephone: (210) 472-1111
Facsimile: (210) 881-6752

*COUNSEL FOR PETITIONER, CLINT
INDEPENDENT SCHOOL DISTRICT*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded on this 8th day of June, 2015, to Respondent's lead appellate counsel via electronic service through the Court's electronic filing system at Texas.gov.

_____
Orlando "Jay" Juarez, Jr.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with the rules governing the length of briefs prepared by electronic means. The brief was prepared using Microsoft Word 2010. Garamond 14 pt. font was used for the body, and Garamond 12 pt. font was used for footnotes. According to the software used to prepare this brief, the total word count, including footnotes, but not including those sections excluded by rule, is 6,278.

_____
Orlando "Jay" Juarez, Jr

# No. 14-0903

## In the Supreme Court of Texas

CLINT INDEPENDENT SCHOOL DISTRICT,
*Petitioner*

v.

SONIA MARQUEZ HERRERA, CLAUDIA GARCIA, AND ALICIA GOMEZ, FOR AND ON
BEHALF OF THEIR MINOR CHILDREN,
*Respondents*

### PETITIONER'S SUPPLEMENTAL APPENDIX

Appendix D -   Second Amended Petition for Declaratory Judgment, Temporary
Injunction, and Permanent Injunction (CR95-108)

Appendix E -   Excerpts of Appellee's Brief in the Court of Appeals

# APPENDIX D

| | | |
|---|---|---|
| SONIA HERRERA MARQUEZ, CLAUDIA GARCIA, and ALICIA GOMEZ, for and on behalf of their Minor Children | § § § § | IN THE DISTRICT COURT |
| Plaintiffs | § | OF EL PASO COUNTY |
| v. | § § | |
| CLINT INDEPENDENT SCHOOL DISTRICT | § § § | |
| Defendant | § | 205th JUDICIAL DISTRICT |

## PLAINTIFFS' SECOND AMENDED PETITION FOR DECLARATORY JUDGMENT, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiffs, who are parents of minor children attending school at various levels in Clint Independent School District, bring this lawsuit, claiming that the District does not equally or equitably fund students at different, comparable schools, in violation of the Texas Constitution, to the detriment of their children.

### DISCOVERY CONTROL PLAN

1. Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiffs give notice that they intend to pursue a Level 2 discovery plan because they seek injunctive relief.

### STATEMENT OF CLAIM

2. Plaintiffs claim that the District does not equally or equitably fund students at different, comparable schools, which their children attend, in violation of the equal rights and education provisions of the Texas Constitution. TEX. CONST. art. I, §3 and art. VII, §1.

3. The per-student expenditures for students in the District's middle and high schools vary widely such that students in schools funded at lesser levels, which Plaintiffs' children and those similarly situated attend, are denied educational opportunities comparable to those provided at schools funded at higher levels. These differences in expenditures are arbitrary and

unreasonable, and produce an inefficient and inequitable distribution of resources not suited to achieve a general diffusion of knowledge in the District.

4. Plaintiffs seek declaratory and injunctive relief, pursuant to the Declaratory Judgments Act, and for costs and reasonable and necessary attorney's fees, as are equitable and just. TEX.CIV.PRAC.&REM. CODE §§37.001 *et seq*.

## JURISDICTION AND VENUE

5. Jurisdiction and venue are proper in this Court because the events or omissions complained of occurred in El Paso County, wherein Clint ISD is located and operates.

## PARTIES

6. Plaintiffs all reside in El Paso County and in Clint ISD, and have children attending schools in the District.

7. Claudia Garcia has a child attending Mountain View High School and two children at East Montana Middle School.

8. Sonia Herrera Marquez has two children attending Mountain View High School, a child attending the Clint ISD Early College Academy and a child at East Montana Middle School.

9. Alicia Gomez has one child attending Horizon High School, a child attending Ricardo Estrada Junior High School, and a child at Carrol T. Welch Intermediate School.

10. Defendant Clint ISD has been served process, and appeared in this case.

## FACTUAL BACKGROUND

11. Clint Independent School District is responsible for administering educational funds to the individual campuses within the District. Clint ISD operates three high school campuses: Clint High School, Horizon High School, and Mountain View High School. The District also operates four junior high or middles school campuses: Clint Junior High School (which feeds

2

000093

into Clint High School), East Montana Middle School (which feeds into Mountain View High School), and Horizon Middle School and Ricardo Estrada Junior High School (both of which feed into Horizon High School).

12. The manner in which CISD distributes its education funding from various sources to the individual campuses results in Clint High School and Clint Junior High receiving disproportionately higher funding relative to their counterparts in the District.

13. In the 2009-10 school year, Clint High School had a total enrollment of 594 students, and received $5,929,831 in operating expenditures from all sources, resulting in an expenditure of $9,983/student. In contrast, Mountain View High School had a total enrollment of 938 students in 2009-10, yet only received $7,965,509 in operating expenditures from all sources, or an expenditure of $8,492/student. The disparity is even greater for students at Horizon High School, which had a total enrollment of 1,453 students in 2009-10. Despite its immense enrollment, Horizon High School received only $9,402,592 in operating expenditures from all sources or an expenditure of only $6,471/student.

14. This significant funding disparity was not limited to high schools. In the 2009-10 school year, Clint Junior High School, which feeds into Clint High School, had a total enrollment of just 480 students, yet received $3,465,136 in operating expenditures from all sources, or an expenditure of $7,219/student. In contrast, East Montana Middle School, which feeds into Mountain View High School, had a total enrollment of 744 students in 2009-10, yet only received $5,084,286 in operating expenditures from all sources, or an expenditure of $6,834/student. Finally, Horizon Middle School, which feeds into Horizon High School, had a total enrollment of 1,295 students in 2009-10. Despite this enormous enrollment, Horizon

3

000094

Middle School received only $6,135,335 in operating expenditures from all sources, or an expenditure of only $4,738/student.[1]

15. There are no apparent extenuating factors in the population of the respective campuses to justify this disparity. In fact, the opposite is true. The Education Code outlines several factors to consider in equalizing the distribution of funds to various districts, based on the population of higher-need students in each district. *See* TEX.EDUC. CODE §§42.001 *et seq*.

16. One of these weighting factors is for the number of students in bilingual education. *Id.* §42.153. For the 2009-10 school year, only 6.6% of the student body at Clint High School was enrolled in a bilingual education program. On the other hand, 16.7% of Mountain View High School's student body was enrolled in bilingual education; and 11.6% of Horizon High School's student body was in bilingual education. The numbers break down similarly at each high school's respective middle school. Clint Junior High had 19.6% of its students enrolled in bilingual education in 2009-10; East Montana Middle School had 25.8% of its students enrolled in such a program; and Horizon Middle School had 17.2% of its students in bilingual education.

17. Another weighted factor considered in state funding is the number of "economically disadvantaged" students at a high school. *See* TEX.EDUC. CODE §42.152. Once again, Clint High School and Clint Junior High, which receive a disproportionately high amount of funding, have a lower percentage of economically disadvantaged students, with Clint High having 72.4% of its campus meet economically disadvantaged status in 2009-10, and Clint Junior High having 82.7% of the student body so designated in 2009-10. Mountain View High School's student population in 2009-10 was 94% economically disadvantaged, while East Montana Middle School's population was 86.6% economically disadvantaged. Finally, Horizon High School's population

---

[1] Note that Ricardo Estrada Junior High began operating for the 2010-11 school year. Operating expenditure data for this school year is not currently available.

4

000095

was 88.2% economically disadvantaged in 2009-10, while Horizon Middle School was 87.5% economically disadvantaged that school year.

18. Any disparity based on these weighted factors for equitable funding would show more expenditures per student for Mountain View High School and Horizon School, due to their higher percentages of these students. In fact, the disparity is reversed, with Clint High School receiving a disproportionate share of the expenditures per student.

19. This disparity is not a recent development. Averaging every year of available data since the 2006-07 school year reveals that Clint High School spent an average of $9,435/student, while Mountain View High School spent an average of $7,553/student; and Horizon High School averaged $6,726/student. This is true despite Clint High School averaging 9.06% of its students being in a bilingual education program and 75.36% of its students being economically disadvantaged. Mountain View had an average 15.14% of its students in bilingual education, and an average 89.88% of its students were economically disadvantaged over the same timeframe. Horizon High School had an average 11.5% of its students enrolled in bilingual education, and an average 90.18% of its students were economically disadvantaged over the same time span.

20. This pattern shows itself as well in the District's middle schools. Clint Junior High spent an average of $7,192/student since 2006-07, while East Montana Middle School spent an average of $6,663/student; and Horizon Middle School had an average of $4,958/student. This, despite Clint Junior High averaging an 83.06% economically disadvantaged population and a 21.3% enrollment in bilingual education, while East Montana Middle averaged an 89.2% economically disadvantaged population and a 25.78% enrollment in bilingual education; and Horizon Middle had an 84% economically disadvantaged population and a 19% enrollment in bilingual education.

5

000096

21. Using these averages as a guide, a student who went through middle and high school in the Clint High School area would have had an average of $50,139 spent on their education, while students who attended East Montana Middle School and Mountain View High would have had an average of $41,853 spent on their education, a difference of $8,286 over six years from their peers at Clint Junior High and High School. Finally, students who attended Horizon Middle School and High School would have had an average of $33,783 spent on their education, a difference of $16,356 over six years.

22. It should come as no surprise that these funding disparities manifest themselves in highly varied levels of academic achievement at the schools in question. For the 2009-10 school year, 75% of Clint High School students met the TAKS (Texas Assessment of Knowledge and Skills[2]) standard on all tests. By contrast, only 68% of Mountain View High students and only 58% of Horizon students met that standard. Since 2006-07, an average of 66% of Clint High School students have met the applicable TAKS standard on all tests, whereas only 56% of Mountain View High and 52% of Horizon High students have done so.

23. The score data is similar at the middle school level. Since 2006-07, an average of 69% of Clint Junior High School students have met the applicable TAKS standard on all tests, whereas only 61% of East Montana Middle School and 65% of Horizon Middle School students have met the standard.

24. These funding disparities also negatively affect students' dropout and graduation rates. Since the 2006-07, Clint High School's dropout rate has averaged 1.76%. For that same period, Mountain View High School's average dropout rate was nearly three times higher, or 4.82%. Horizon High School's average dropout rate was over double that of Clint's, or 3.92%.

---

[2] As of Spring 2012, the State of Texas Assessments of Academic Readiness (STAAR) has replaced the TAKS test. We use TAKS here because the TAKS test was administered in the years discussed above.

6

000097

25. The same hold true with graduation rates. Since the 2006-07, Clint High School has averaged an 88.88% graduation rate, while Mountain View High School averaged only a 74.36% graduation rate and Horizon High School just 81.68%. As a percentage, this signifies Clint High School graduated students at a rate 19% higher than Mountain View High School and nearly 9% higher than Horizon High School.

## CAUSES OF ACTION

### I. Violations of Texas Constitution Article VII, Section 1

26. Education plays a crucial role in the economic, political, and social fabric of our society. The Texas Constitution recognizes the critical importance of education and establishes the duty of the State to provide free public education:

> A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools. TEX.CONST. art. VII, §1.

27. Moreover, the "mission" of the Texas Education Code is a public education system that:

> ... ensur[es] that all Texas children have access to a quality education that enables them to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation. TEX.EDUC. CODE §4.001(a).

28. It is through the local school districts that the will of the Texas legislature under Article VII, Section 1 is effectuated. *W. Orange-Cove Consol. I.S.D. v. Alanis (Edgewood V),* 107 S.W.3d 558, 581 (Tex. 2003). As a result, school districts are not free to violate this constitutional mandate of providing an adequate education. *Id.* at 584.

29. The Texas legislature has created formulas for equalization of property tax revenue across districts based on tax effort, "weighted" student attendance counts, and property wealth

7

000098

per "weighted" student.[3] These formulas are to implement TEX.CONST. art. VII, §1 and distribute funds to Clint ISD.

30. In addition to state funds, the federal government contributes funds meant to battle school inequity chiefly through the No Child Left Behind Act ("NCLB"). Title I of NCLB is the best known section of NCLB, and the main source of funding. All Title I funds are meant to help close the achievement gap between schools within a district.

31. Use of Title I funds is restricted. Individual schools may not use them on what are considered extra programs, such as field trips. Instead, they fund only basic and necessary programs and positions that directly contribute to closing the achievement gap — but again, these programs and positions must be funded after the schools receive comparable funding for educational services as other schools within the district. The District therefore cannot point to Title I funds to compensate for the inequity alleged here in the District's expenditures per student of its own funds.

32. Further, the District's distribution scheme results in a system that is not "efficient," "adequate," or "suitable" as mandated by the Texas Constitution and implemented by the state legislature. TEX.CONST. art. VII, §1. While the Supreme Court has addressed these criteria in the context of the State's school finance system, the District cannot then implement an arbitrary distribution scheme that frustrates the State's constitutional obligation at an intra-district level.

33. For a system to be "efficient" under Texas law, it must provide "substantially equal access to similar revenues per pupil at similar levels of tax effort.'" *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist. (Edgewood VI)*, 176 S.W.3d 746, 790 (Tex. 2005) (quoting *Edgewood I*, 777 S.W.2d at 397). Logically since all families within the District are making the same tax

---

[3] The "weighted" student count adds anywhere from 0.1 (e.g., for limited English proficient students) to 0.5 (for each special education student) to the student count used in the funding formula, in recognition of the higher cost to educate higher-needs students. These "weights" determine the basic count used in many funding formulas as the number of "weighted students in average daily attendance" or "WADA."

8

000093

effort, the District cannot allow substantially different levels of funding to pupils simply based on which attendance zone they are in. To be adequate, the district must operate reasonably to provide students with "access and opportunity." *Neeley,* 176 S.W.3d at 787. Again, inequitable funding within the District denies equal access and opportunity to some students.

34. The Texas Education Code re-affirms this emphasis on access and opportunity:

> An educational institution undertaking to provide education, services, or activities to any individual within the jurisdiction or geographical boundaries of the educational institution shall provide equal opportunities to all individuals within its jurisdiction or geographical boundaries pursuant to this code. Tex.Educ. Code §1.002.

35. Suitability specifically refers to the means chosen to achieve an adequate education through an efficient system. *Neeley,* 176 S.W.3d at 793. Clint ISD has no justifiable rationale for its manner of distributing such that it results in the highly disparate per pupil expenditures among schools.

36. Clint ISD's intra-district funding does not meet constitutional or statutoy standards. The greatly disparate allocation of funding within Clint ISD unreasonably renders unequal the opportunities and access to programs and services for students at the various middle and high schools. In *Edgewood I,* the Supreme Court found a difference of approximately $2,000/student per year between the wealthiest districts and the poorest districts to be unacceptable. *Edgewood I,* 777 S.W.2d at 392-93. As shown above, Clint ISD averages a $2,000/student per year difference between its highly-funded Clint High School and its intermediately-funded Mountain View High School. Clint ISD averages an almost $3,000/student per year difference between Clint and Horizon High Schools. The District further averages a difference of more than $2,500/student per year between Clint Junior High School and Horizon Middle School.

37. As the TAKS results above demonstrate, the diffusion of knowledge within CISD is extremely inadequate and unsuitable, with students at Clint High School meeting TAKS

000100
000101

9

standards at an average 10% higher than their peers at Horizon High and 14% higher than their peers at Mountain View High. This is also true at the junior high level, where students at the well-funded Clint Junior High meet TAKS standards at a rate 4% higher on average than those at Horizon Middle School and 8% higher on average than those at East Montana Middle School, both of which receive markedly less funding.

38. Clint ISD's dropout and graduation rates further show the effects of this unbalanced funding scheme, weighted toward the community of Clint. Clint High School has a significantly lower high school dropout rate representing approximately one-third and one- half that of the dropout rates of Montana Vista High and Horizon City High, while its graduation rate is approximately 19% and 9% higher than these same communities.

39. Thus, Clint ISD has thwarted the Legislature's implementation of its constitutional mandate "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools" so as to guarantee a "general diffusion of knowledge ... essential to the preservation of the liberties and rights of the people," and thus violated, and continues to violate, the rights of Plaintiffs' children and those similarly situated thereunder. TEX. CONST. art. VII, §1.

II. Violations of Texas Constitution Article I, Section 3

40. The Texas Constitution also guarantees that all people of Texas shall have equal rights and equal protection:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services. TEX. CONST. art. I, §3.

41. For the purposes of the Constitution's equal rights section, the rational basis test requires, in part, that "similarly situated individuals must be treated equally under the statutory

000101

classification unless there is a rational basis for not doing so." *Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex. 1985). Clint ISD's division of funds in this case clearly fails that mandate.

42. While the District's classifying of their students based on which junior high or high school they attend is rational, its differential treatment of these students, in the form of disparate levels of funding, is not. There are no mitigating circumstances in the form of "weighted," higher-needs students justifying such highly disparate levels of per-student expenditures. Indeed, several of the state-mandated "weighting" factors weigh in favor of the schools that are receiving less funding per student. An average student, who attends Horizon High, is situated similarly to an average student attending Clint High. Yet, based on Clint ISD's funding differentials, the Horizon High student would have had over $3,500 less spent on their education in the 2009-10 school year relative to Clint High student, with absolutely no rational basis for this disparity. This disparity has denied Plaintiffs' children access to an equal education and harmed their educational outcomes, which has consequences for their future lives.

43. Thus, Clint ISD has violated, and continues to violate, the equal rights of Plaintiffs' children and those similarly situated, under the state constitution. TEX. CONST. art. I, §3.

### DECLARATORY RELIEF

44. Plaintiffs are entitled to a declaratory judgment and relief thereunder concerning Defendant's violations of the Texas Constitution, specifying the rights of their children, namely, that Clint ISD has failed and refused, and continues to fail and refuse, to provide Plaintiffs' children and those similarly situated with equal education funding for all students at a comparable grade level, appropriately weighted according to the state funding formula, and thereby has denied, and continues to deny, those children their right to a suitable and efficient system of public free schools and their right to equal protection under the Texas Constitution, as described above.

000102

11

## INJUNCTIVE RELIEF

45. Because of Clint ISD's on-going violation of their children's rights, Plaintiffs are entitled to temporary and permanent injunctive relief against Defendant from failing and refusing to provide their children and those similarly situated with equal education funding for all students at comparable grade levels, appropriately weighted according to the state funding formula.

46. Because this action involves intangible constitutional rights to an education and to equal education opportunity that directly affects their lives now and in the future, Plaintiffs' children and those similarly situated will suffer probable, imminent, immediate, and irreparable injury in the interim, for which there is no compensation available, if the Court does not grant them temporary injunctive relief. Defendant will suffer no harm by being compelled to provide Plaintiffs' children and those similarly situated an equal amount of education funding as provided for all students at a comparable grade level, appropriately weighted according to the state funding formula. Plaintiffs have shown a probable right to the relief sought in this litigation.

## ATTORNEYS' FEES AND COSTS

47. Plaintiffs are entitled to reasonable and necessary attorney's fees, as are equitable and just, and court costs, under the Declaratory Judgments Act. TEX.CIV.PRAC.&REM. CODE §37.009.

## REQUEST FOR DISCLOSURE

48. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2(a)-(f), (i), and (l).

## PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully request that this Court award them the following relief:

000103

A.. Enter a declaratory judgment that Defendant has failed and refused, and continues to fail and refuse, to provide Plaintiffs' children and those similarly situated with equal education funding for all students at comparable grade levels, appropriately weighted according to the state funding formula, and thereby has denied, and continues to deny, those children their right to a suitable and efficient system of public free schools and their right to equal protection under the Texas Constitution, as described above;

B. Permanently enjoin Defendant from failing and refusing to provide Plaintiffs' children and those similarly situated with equal education funding for all students at comparable grade levels, appropriately weighted according to the state funding formula;

C. Find that Plaintiffs are the prevailing parties in this action, and order Defendant to pay costs, and reasonable and necessary attorney's fees, as are equitable and just, pursuant to the Declaratory Judgments Act; and,

D. Grant such other and additional relief to which Plaintiffs and those similarly situated may be entitled in this action, at law or equity.

Dated: February 21, 2013.

Respectfully submitted,

John E. Untereker
Texas Bar No. 24080627
James C. Harrington
Texas Bar No. 09048500
Wayne Krause
Texas Bar No. 24032644

PASO DEL NORTE CIVIL RIGHTS PROJECT
1317 E. Rio Grande Ave
El Paso, Texas 79902
915-532-3799 [phone]
915-532-8892 [fax]

AND

13

000104

Carlos Cárdenas
Texas Bar No. 03787700

LAW OFFICES OF
JOSEPH (SIB) ABRAHAM, JR.
P.O. Box 512312
El Paso, TX 79951-0004
Tel- (915)-544-7860
Fax- (915)-532-4768

ATTORNEYS FOR PLAINTIFFS

000105

# APPENDIX E

RECEIVED

OCT 9 2013

DENISE PACHECO, CLERK
EIGHTH COURT OF APPEALS

08-19-00092-CV

# 08-09-00092-CV

## In The

# Eighth Court of Appeals

Sitting at El Paso

---

**SONIA MARQUEZ HERRERA, CLAUDIA GARCIA, AND ALICIA GOMEZ, FOR AND ON BEHALF OF THEIR MINOR CHILDREN,**

Appellants,

v.

**CLINT INDEPENDENT SCHOOL DISTRICT,**

Appellee

FILED IN
COURT OF APPEALS

OCT 9 2013

DENISE PACHECO
CLERK 8th DISTRICT

---

**Appealed From the 205th District Court**
**El Paso County, Texas**
**Trial Court Cause No. 2012-DCV05582**

---

# APPELLEE'S BRIEF

---

JEFFREY L. DORRELL
Texas Bar No. 00787386
jdorrell@hanszenlaporte.com
TERESA GUTIERREZ
State Bar No. 24078608
tgutierrez@hanszenlaporte.com
**HANSZEN LAPORTE, LLP**
11767 Katy Freeway, Suite 850
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR APPELLEE**

**APPELLEE REQUESTS ORAL ARGUMENT**

> **Requiring exhaustion of administrative remedies is not meant to deprive an aggrieved party of any legal rights. It is meant, rather, to provide an orderly procedure by which aggrieved parties may enforce those rights.**

*Ysleta ISD v. Griego*, 170 S.W.3d 792, 795 (Tex. App.—El Paso 2005, pet. denied). The policy behind the exhaustion-of-remedies doctrine is to allow the agency to resolve disputed issues of fact and policy and to assure that the appropriate body adjudicates the dispute. *Essenburg v. Dallas Cnty.*, 988 S.W.2d 188, 189 (Tex. 1998). Implicit in this policy is the recognition that courts are ill-equipped to perform such tasks.

The Texas Commissioner of Education has exclusive jurisdiction over (i) the school laws of this state; and (ii) decisions of a school district board of trustees that violate the school laws of this state—importantly, *even violations with constitutional implications*.[3] TEX. EDUC. CODE ANN. § 7.057(a). The Commissioner's jurisdiction extends to any appeals of a person aggrieved by actions of any board of trustees. *Id.* § 21.209. This exclusive jurisdiction requires appellants here to exhaust local school district grievance procedures before filing suit if their case concerns administration of school laws and involves questions of fact. *Tex. Educ. Agency v. Cypress-Fairbanks ISD*, 830 S.W.2d 88, 90-91 (Tex. 1992); *Nairn v. Killeen ISD*, 366 S.W.3d 229, 241 (Tex. App.—El Paso 2012, no pet.). It does.

7

## B. The "Pure-Question-of-Law" Exception—Does the Case at Bar Involve Administration of School Laws and Disputed Questions of Fact?

Yes. It is true that under certain limited circumstances, the administrative exhaustion requirement does not apply and an aggrieved party may seek relief in the courts without overcoming that hurdle. If the issues presented involve "a pure question of law," such as when the uncontroverted facts show that the board lacked authority to take the action that caused the harm, the party may appeal directly to the courts. *Westheimer ISD v. Brockette*, 567 S.W.2d 780, 785-86 (Tex. 1978); *Mitchison v. Houston ISD*, 803 S.W.2d 769, 774 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Although appellants make this argument in instant matter,[4] that is clearly not the case here.

Determining the constitutionality of Clint's allocation of funding among its schools necessarily involves determining the validity of the district's budgeting and other discretionary actions. In the "School District Creation and Tax Clause," the Texas Constitution makes local school districts responsible for carrying out laws passed by the Legislature, including those related to the "management and control" of the schools within a local district. TEX. CONST. art VII, § 3(e).

---

[3]  *See* ***Houston ISD v. Rose***, 2013 Tex. App. LEXIS 8098 at *11-12 (Tex. App.—Houston [1st Dist.] July 2, 2013, n.p.h.), discussed extensively in <u>Section C</u> below, p. 13.

[4]  *See* appellants' brief, pp. 28-29.

Clint ISD—like all Texas school districts—has the "primary responsibility for implementing the State's system of public education." TEX. EDUC. CODE § 11.02. Clint ISD—like all Texas school districts—has the duty and discretion to "oversee the management of the district...." TEX. EDUC. CODE § 11.051. Clint ISD—like all Texas school districts—has "the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE § 11.051(b). Clint ISD—like all Texas school districts—is required to:

(i) adopt a budget; and

(ii) monitor district finances to ensure that the superintendent is properly maintaining the district's financial procedures and records.

TEX. EDUC. CODE § 11.01511(b)(7) and (9). The Clint superintendent—like all Texas school superintendents—is responsible for preparing a proposed budget "covering all estimated proposed revenue and expenditures of the district" each year. TEX. EDUC. CODE § 44.02(a). Before the board of trustees can adopt the proposed budget providing for "expenditures of the district," Clint—like all Texas school districts—must have a public meeting for this purpose called not less than 10 days after publication in a newspaper published in the district of the budget meeting. TEX. EDUC. CODE § 44.004(b). Obviously, the purpose for the requirement of public notice of annual budget meetings is to give the voters (or appellants, in the case at

9

bar) an opportunity to participate in the district's allocation of funds to and among its schools—or, more precisely, in this Court's words in *Ysleta ISD v. Griego*, 170 S.W.3d 792, 795 (Tex. App.—El Paso 2005, pet. denied), "an orderly procedure by which aggrieved parties may enforce [their] rights." Needless to say, no such procedure is available to parties aggrieved by the *State's* system of educational funding addressed in *Neeley v. West Orange-Cove Consol. ISD (Edgewood VI)*, 176 S.W.3d 746 (Tex. 2005).

Not only do appellants fail to show that they availed themselves of this "orderly procedure," appellants *boldly declare that they are not required to do so.* This is true, appellants say, because their claims involve a "pure question of law." Appellants' brief, pp. 28-29. Appellants argue that this is so because Clint "did not contest that the funding disparity [alleged in appellants' pleadings below] exists" in the trial court. *Id.* at 29. Appellants' argument is flawed in three ways.

First, appellants are not being candid with the Court when they represent that Clint "did not contest the funding disparity" they allege. As a matter of hornbook procedural law, Clint's general denial (CR 43) alone is sufficient to put [facts pleaded by the adverse party] in issue." TEX. R. CIV. P. 92. Thus, Clint has denied *every* factual allegation made by appellants.

Second, after somewhat tediously comparing the per-student allotment of funds at various Clint schools, appellants conclude that

inequality of this allocation within in the district is—*in and of itself*—unconstitutional. Appellants' brief, pp. 21-22. Appellants admit "neither the Supreme Court nor the Legislature" has ever reached such a conclusion in a case involving funding "*within* school districts"—thus confessing that appellants' objective is to sail the State into uncharted juridical waters. Appellants brief, p. 25. More troubling still, appellants' conclusion that the constitution requires mathematical uniformity in funding is in conflict with the Supreme Court's jurisprudence. In *Edgewood VI*, the court held:

> **Districts satisfy [their] constitutional obligation when they provide all of their students with a *meaningful opportunity* to acquire the essential knowledge and skills reflected in ... curriculum requirements ... such that upon graduation, students are prepared to 'continue to learn in postsecondary educational, training, or employment settings.' We agree, with one caveat. <u>The public education system need not operate perfectly; it is adequate if districts are *reasonably* able to provide their students the access and opportunity the district court described.</u>**

*Id.* at 792, [Italics in original, underlining added] quoting *West Orange-Cove Consol. ISD v. Neeley*, No. GV-100528, at 65 (250th Dist. Ct., Travis County, Tex. Nov. 30, 2004) (on file with the *St. Mary's Law Journal*)). Thus, the fact that Clint may not "operate perfectly," if proved, is not proof of constitutional infirmity. More to the point, appellants' allegation of inequality does not articulate a "pure question of law" that excuses exhaustion of administrative remedies.

Third, appellants' claim that because Clint did not specifically deny appellants' funding data the question of whether Clint's budgeting process

11

is legal is a "pure question of law" is contradicted by even a cursory review of TEX. EDUC. CODE §§ 11.02, 11.051(b), 11.01511(b)(7), 11.01511(b)(9), 44.02(a), and 44.004(b). Furthermore, the myriad of fact issues inherent in a determination of whether Clint properly allocated its funds is so evident as to scarcely require elaboration. For example, some schools will require greater funding to account for outdated technology or failing mechanical systems. Some may need more resources to deal with special-needs children, to update facilities to provide for students with disabilities, or to bus more students who do not live near the schools they attend. Some may require less state funding due to an abundance of funding from other sources. Other fact issues abound.

Perhaps this is why even the Education Code does not attempt to override a local school district's discretion in assessing and meeting these disparate needs by dictating that funding be mathematically uniform among a district's schools (although such a statute could easily be written). Yet, a court that assumes the jurisdiction as appellants ask would have only two options: (i) to impose a wooden rule that denies a district the discretion to make disparate allotments among its schools according to their needs; and (ii) to reweigh those needs in order to substitute the court's judgment for that of the trustees. The first is foolish. The second is a prelude to krytocracy. Appellants lose.

12

## C. Do Appellants' Claims of Constitutional Violations Avoid the Exhaustion-of-Remedies Requirement?

No. It is true that an exception to the administrative exhaustion requirement exists if the party "has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy." *Taylor v. U.S. Treas. Dep't*, 127 F.3d 470, (5th Cir. 1997), *quoted in Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007). Appellants argue that Clint's "inequitable funding" implicates "the Equal Rights Clause and the Education Clause of the Texas Constitution."[5] Appellants' brief, p. 21. Relying heavily on *Jones v. Clarksville ISD*, 46 S.W.3d 467, 474 (Tex. App.—Texarkana 2001, no pet.), appellants argue that their claims of constitutional violations are exempt from the requirement of exhaustion of remedies.

While *Jones* acknowledges this principle, *Jones* does not support appellants' position. The *Jones* court importantly notes that the mere presence of constitutional claims *alone* "does not end our inquiry." *Id.*

> **If the constitutional claims are ancillary to and supportive of a complaint about the board's ... application of school law, then the entire action should be amenable to administrative appeal.**

*Id.* Importantly, the *Jones* court warns against the very canard appellants attempt with their constitutional claims in the case at bar:

---

[5] The constitutional exception is usually limited to cases in which a party has asserted a federal constitutional claim or a claim under Title 42 of the United States Code. *See Janik v. Lamar Consol. ISD*, 961 S.W.2d 323-24 (Tex. App.—Houston [1st Dist.] 1997, writ denied).